SI BROOKS v. DE SOTO OIL Co.

[57 South. 228.]

1. DECLARATION. *Master and servant. Safe place to work. Injury to servant.*

In a suit by a servant against the master for failure to furnish a safe place to work a declaration which alleges that the master maintained an unguarded set screw upon a revolving pulley, near which the servant was required to work, by which the servant was injured, was not demurrable, as the master was either negligent as a matter of law or the question of his negligence was one for the jury.

2. MASTER AND SERVANT. *Injury to servant. Contributory negligence.*

A servant is under no duty to examine the machinery about which he is working as he has a right to presume that the master has discharged his duty of furnishing him a safe place in which to work.

APPEAL from the circuit court of Washington county. HON. J. M. CASHIN, Judge.

Suit by Si Brooks against the De Soto Oil Co. From a judgment sustaining a demurrer to the declaration, plaintiff appeals.

This is an appeal from a judgment of the circuit court sustaining a demurrer to the declaration of appellant (who was plaintiff below). The declaration contains two counts, which are substantially as follows :

First count: At the time of the occurrance of the injuries complained of, appellee was operating an oil mill, and among other departments thereof it was operating a linter department, where the lint remaining on cotton seed was ginned off and baled, and that as a part thereof it was operating a huller; that for the purpose of operating the machinery necessary to do the hulling and linting, as a part of the motor power thereof, there was a shaft in the linter department, which was run by a belt from the engine below, and on which shaft there was a pulley, over which ran a belt that was connected with and operated what is known as a feeder to the hullers, which pulley was fastened on said shaft and kept tight thereon by a set screw, the head of which protruded two and one-half inches above the neck of the pulley, and was left unprotected and uncovered, and was dangerous to operatives who might go near it in performance of their duties; that when said machinery and pulley were running the set screw was not visible, and when said machinery was not runing said set screw was largely obscured from view by the rim of the pulley; that the belt which run over the pulley and operated the feeder to the hullers occasionally ran off of the pulley onto the shaft, and it thereby became necessary to replace it on the pulley, and that such was done while the machinery was in motion, which was not of itself a dangerous act to attempt to do, except for the dangerous condition of said set screw; that, at the time of the injuries complained of, appellant was employed by appellee in the capacity of huller, whose duties were to take the lint

from the huller to the press and bale the same, and while he was thus engaged in this employment he was, without first being notified by appellee of the dangerous condition of said set screw, directed and ordered by his supervisor, who was foreman or boss of that department to replace the belt on the pulley, said belt having run off thereof onto the shaft, which appellee proceeded to attempt to do in obedience to orders, and while attempting to do so he was caught in his clothes by said set screws, and thrown over and over the shaft, and thereby greatly bruised, injured, and maimed, having, among other injuries, his right leg and foot so crushed as to render amputation necessary, and otherwise causing him great suffering, etc.

Second count: The second count alleges substantially the same facts as set forth in count 1, further alleging in addition thereto that appellee well knew of the dangerous condition of said set screw, and had failed to notify and warn him of such dangerous condition.

To the above declaration appellee interposed the following demurrer, to-wit:

(1)  That neither count stated a cause of action.

(2)  The declaration shows plaintiff's negligence was the proximate cause of the injury.

(3)  That both counts of the declaration show clearly that appellant knew of the alleged danger and defects in said set screw, and the danger was such that no prudent man would have obeyed the orders of the alleged superior to replace the belt, and that plaintiff knew the risks arising from replacing said belt.

This demurrer was sustained by the court, and, appellant declining to amend his declaration, the court dismissed the same, and from that judgment this appeal is prosecuted.

*Watson & Jayne,* for appellant.

This case, as we understand it, is one of first impression in Mississippi, while the courts in other jurisdictions are divided as to what is the better rule in what are known as set screw cases. We frankly admit, and from a juristic standpoint, will say, that we regretfully admit that the weight of authority is adverse to our contention in this case.

We cannot add anything in strength to the terse and telling language of condemnation of the majority of the set screw cases used by Judge Thompson in his work on Negligence.

In Thompson on Negligence, section 4022, this author says: "Injuries to servants from unguarded set screws have been of such frequent occurrence, and the means of preventing them being so obvious and inexpensive, there is something peculiarly atrocious in those judicial decisions which condone the use of this specie of murder machine. It is gratifying to note that the exposed or unguarded set screw on revolving shafts is now rapidly going out of use, not in consequence of judicial decisions condemning it, but under the compulsion of statutes. A few decisions justifying the retention of this infamous contrivance, even in factories where children are employed, linger in the books.

In happy contrast to the cases cited by Judge Thompson is the rule adopted by the Canadian court. Thompson on Negligence, section 4023; *George Matthews Co.* v. *Bouchard,* 28 Can. S. C. 580. As is also the rule expressed in *Mountain Copper Co.* v. *Pierce,* 13 Fed. 150.

The case made by the declaration, however, is a stronger case than those in the majority of cases cited by Judge Thompson. This we say because of the allegation in each count of the declaration with regard to the peculiar condition of the set screw; the set screw was not visible when the machinery was running and was largely obscured when the machinery was not run-

ning, and the act of replacing the belt was alleged not to have been a dangerous one but for the condition of the set screw. It is also alleged that appellee knew of the dangerous condition of the set screw and did not notify appellant thereof.

The court has in a number of instances declined to bow to or adopt a rule of law laid down by a majority of cases from other jurisdictions when the same were not in accord with the better law of the case. In so doing it has exercised that quasi-legislative function which belongs to courts of our country, and which, when followed with a judicial spirit, means so much in the shaping of the jurisprudence of the commonwealth.

In order to bring out to bolder relief, if possible, the condemnation of the set screw cases by Judge Thompson, it may not be amiss to say that the legislature of the state of New York has passed a statute requiring "all shafting, set screws, belts and pulleys to be properly guarded," and that out of seven hundred and seventy-nine accidents resulting in personal injuries, arising from this particular part of machinery, three hundred and thirty-seven were due to protruding set screws. This is the only state from which we, at present, have any data on this subject, in this case.

With all due deference to the learned court who handed down the opinions cited by Judge Thompson, we contend that the more enlightened, the more humane and more satisfactory rule of law would have been and is that the act of leaving the set screw uncovered and protruding to a dangerous extent is of itself *per se* negligence.

*Walton Shields,* for appellee.

We respectfully submit that the declaration in this cause clearly shows that the appellant knew of the dangerous condition of the set screw, and in the exercise of ordinary prudence he should have known that it was a dangerous risk to replace the belt on the pulley, and there

is no liability where the danger is such that no prudent man would have encountered it.   See *Truly* v. *North Lumber Co.,* 83 Miss. 430.

*C. L. Marsilliott,* for appellee.

The declaration certainly contains averments substantially showing that plaintiff saw, or could have seen the set screw.

Counsel cite, and seem to rely wholly, upon the case of *Mountain Copper Co.* v. *Pierce,* 69 C. C. A. 148, 136 Fed. Rep. 150, but when this case is carefully analyzed it will be seen at once that it does not sustain their contention.   In that case the court found, as a matter of fact, that the plaintiff was not familiar with machinery, and, indeed, knew little or nothing about it, "and the court rested its decision upon the proposition that "it is the duty of the master before sending or permitting an inexperienced employee to perform such dangerous work, to instruct him how to perform it, and especially to inform him of any hidden, concealed or obscure danger."

Manifestly, this case is not in point.   There is no contention on the part of appellant that he was inexperienced, and the declaration contains nothing even tending to indicate that appellant was injured because of a failure of appellee to warn him of a hidden or concealed danger.

No case better illustrates the admission of counsel, that their contentions are contrary to the weight of authority, than that of *Wabash Paper Co.* v. *Webb,* 1 Am. Neg. Rep. 23, decided by the supreme court of Indiana in 1896; *Railroad* v. *Stick,* 143 Ind. 449; *Rooney* v. *Sewall & Day Cordage Co.,* 161 Mass. 153; *Coombs* v. *New Bedford Cordage Co.,* 102 Mass. 572; *Podvin* v. *Pepperell Mfg. Co.,* 21 Am. Neg. Rep. 137; *Norfolk Beet Sugar Co.* v. *Preuner,* 75 N. W. Rep. 1097; *Keats* v. *Nat. Heeling Mach. Co.,* 13 C. C. A. 221.

SMITH, J., delivered the opinion of the court.

That this unguarded set screw constituted a menace to the life and limb of any person engaged in the work being done by appellant at the time of his injury is hardly open to question, and that this danger could have been easily removed by guarding or sinking the set screw is also equally obvious. This being true, unless there existed circumstances not appearing in this record which relieved appellee from the duty of guarding or sinking this set screw, it follows, either that appellee was negligent as a matter of law in failing to guard or sink the screw, and thus furnish appellant with a safe place in which to work, or it was for the jury to say whether it was negligent in failing to do so. In either event, the demurrer should have been overruled. *Matthews Co.* v. *Bouchard,* 28 Can. S. C. 580; *Mountain Copper Co.* v. *Pierce,* 136 Fed. 150, 69 C. C. A. 148; *Pruke* v. *South Park Foundry & Machine Co.,* 68 Minn. 305, 71 N. W. 276; *Geno* v. *Fall Mountain Paper Co.,* 68 Vt. 571, 35 Atl. 475; *Homestake Mineral Co.* v. *Fullerton,* 69 Fed. 923, 16 C. C. A. 545; *Rabe* v. *Consolidated Ice Co.* (C. C.) 91 Fed. 457. We are aware that there is a line of decisions dealing with the question of unguarded set screws announcing a contrary rule; but we decline to follow them, and fully agree with Mr. Thompson in his criticism of them contained in sections 4021, 4022, and 4023 of volume 4 of the second edition of his work on Negligence.

There are no facts alleged in the declaration from which it could be said that appellant was guilty of contributory negligence. He was under no duty to examine the machinery, for he had a right to presume that the master had discharged his duty of furnishing him a safe place in which to work.                *Reversed and remanded.*