PAUL KUHN v. JAMES W. LUSK, Receiver of ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Division One, March 2, 1920.

1. DANGEROUS MACHINERY: Duty to Guard When Statute Does Not Apply. Independently of the statute and at common law, if ordinary care requires that dangerous machinery be guarded in order to render the place in which the servant is directed to work reasonably safe, then the master is liable for injuries to the servant resulting from a failure to exercise such care.

2. ———: ———: Ordinary Care. In Missouri the master incurs liability for failure to guard dangerous machinery where ordinary care for the safety of his servants requires it to be guarded, and that duty remains, although the statute requiring dangerous machinery to be guarded has no application to the situation.

3. ———: ———: ———: Assumption of Risks. The rule in Missouri is that the servant does not assume a risk that grows out of his master's negligence, however obvious or plain, but only assumes the peril incident to the service remaining after the master has exercised ordinary care; and in the exercise of ordinary care, in all occupations attended with great and unusual danger, the master is required to provide all appliances readily attainable and known to science for the prevention of accidents; and where the facts demonstrate that the master had in operation a machine about which he required his servant to work, that the danger was strikingly apparent, that at a trifling expense a guard or cover around such machine could have been maintained, which would in no wise have lessened its efficiency, and that if the guard had been maintained the danger to the servant would have been wholly removed, ordinary care required the master to provide the guard.

4. NEGLIGENCE: Not Supported by Evidence. Specific defects in a machine, charged in the petition to be a cause of plaintiff's injury, which are not established by any substantial evidence, should not by the instructions be submitted to the jury as a basis for plaintiff's right to recover.

5. ———: ———: Recovery on Different Specifications. If the jury are by the instructions permitted to find for plaintiff on either of two specifications of negligence, and as to one of them the evidence is insufficient to support a finding, a verdict and judgment for him must be set aside and the cause retried.

6. ———: Obvious Danger: Question for Jury. Plaintiff testified that he knew and fully appreciated the danger attendant upon cleaning the boxing next to the revolving cog-wheel, but as the gears fed upward he thought he could reach over the axle and

wipe the grease from the under side without his coat sleeve being drawn into the cogs. *Held*, that, whether the danger of so doing was so great that an ordinarily careful and prudent man would not have attempted it was a question for the jury.

Appeal from Barton Circuit Court.—*Hon. B. G. Thurman*, Judge

REVERSED AND REMANDED.

*W. F. Evans* and *Mann, Todd & Mann* for appellant.

(1) At common law the master is not required to guard his machinery but could leave all parts of the machinery unguarded and incur no legal liability on that account. Cole v. Lead Co., 240 Mo. 404; Czernicke v. Ehrlick, 212 Mo. 386; Lore v. Manufacturing Co., 160 Mo. 608; Blair v. Heibel, 103 Mo. App. 621; Gleason v. Smith, 172 Mass. 50. (2) The respondent cannot avail himself in this action of the benefits of the statute regarding guards for dangerous machinery, to-wit, Sec. 7828, R. S. 1909: (a) Because the petition neither counts on the statute or brings the case within the terms thereof, but simply counts on the negligence of the appellant, "in failing to exercise ordinary care to furnish plaintiff a reasonably safe place to work, in that defendant failed to exercise ordinary care to properly house or shield the gearing or cogwheels to said motor." There is no allegation in the petition in the language of the statute or otherwise that the gearing was so placed as to be dangerous to persons employed thereabout while engaged in their ordinary duties, or that it was possible to guard it so as to prevent the injury. R. S. 1909, sec. 7828. (b) Because respondent, as his petition clearly indicates, founded his action in this regard upon the failure of the appellant to furnish him a reasonably safe place to work, in that it failed to house or shield the gearing. Respondent further introduced his testimony upon this theory over the objection of appellant and in drafting his instructions respondent relied solely on the common law liability and did not instruct under any theory covered by the statute. Respondent is bound by the theory upon which he not only brought but tried his case and submitted it to the

jury. Degonia v. Railway, 224 Mo. 588; Brunswick v. Insurance Co., 213 S. W. 46; Hoff v. Transit Co., 213 Mo. 470; Bray v. Seligman, 75 Mo. 40; Williams v. Loban, 206 Mo. 407; St. Louis v. Right, 210 Mo. 502; Brick Co. v. Railway, 213 Mo. 727; Williams v. Railroad, 233 Mo. 676; Lalapie v. Saddlery Co., 193 Mo. 13. (c) Because the appellant herein is the receiver of a railroad company and the provisions of Art. 6, Chap. 67, R. S. 1909, of which said Section 7828 is a part, was not intended to effect or govern railroads, and if undertaken to be so construed as to apply to railroads then said section as well as that article is unconstitutional, as has already been so declared by this court. Williams v. Railroad, 233 Mo. 666; Mo. Constitution, Art. 4, Sec. 28. (3) Instructions number 1 and number 2 are erroneous. They submit two grounds of negligence which the jury might consider in determining the question of defendant's liability. There is no evidence in the record that the boxings and babbitt bearings were old, defective and loosened, and if there were testimony that they were old, defective and loosened or if the wheels did not mesh true with each other so that when said machinery was in motion there was a lateral or wabbling movement of the gearing and a vibration of the frame of the motor and bearing of the shafting, then there is no evidence in the record that any of these things directly or in any manner caused plaintiff's sleeve to get caught in the gear or that they contributed in any way to his injury. The mere fact that such alleged condition of the bearings and gear existed did not entitle respondent to recover. In order that he should recover, his evidence must prove or tend to prove that these conditions were the proximate cause of his injury. In other words, except for the existence of these alleged defects his sleeve would not have been caught and he would have received no injury. Trigg v. Lumber Co., 187 Mo. 234; Doerr v. Brewing Assn., 176 Mo. 556; Thompson v. Railroad, 140 Mo. 135; Stepp v. Railroad, 85 Mo. 233; Stanley v. Railroad, 114 Mo. 624; Henry v. Railroad, 76 Mo. 293; Jackson v. Elevator Co., 209 Mo. 506; Go-

ransson v. Mfg. Co., 16 Mo. 307.; McGee v. Railroad, 214 Mo. 543.

*Sizer & Gardner* for respondent.

(1) This action is not bottomed on our statute requiring dangerous machinery to be housed. Sec. 7828. Since the enactment of that statute in 1891, a statutory duty exists upon manufacturer to house all machinery covered by this statute, and a failure to do so is negligence *per se.* This statute has been held not to apply to railroads; whether rightly so or not, we do not say. Williams v. Railroad, 233 Mo. 666. But in the absence of such statute, a duty exists by the master towards his servant, and this is what has been designated his common-law duty. The statute covers only such machinery as is mentioned by it, while the common law covers all machinery the same as it covers any other appliance furnished by the master. Machinery as an appliance of the master, finds no exception at common law, for the same rule applies to it that applies to tools and other appliances. The loose statements by our courts do not change the common law or modify its strictness in the least, and the common law obtains in all its completeness today, notwithstanding such expression by our courts. We do not contend that there is such duty as is imposed by the statute at common law, but only the duty to use ordinary care. If machinery is dangerous and the exercise of ordinary care requires it to be housed in order to make it, or the place, reasonably safe, then the master is as in duty bound to house it at common law as he is by statute; and a failure to house under such circumstances is negligence equally as culpable as a violation of the statute. Czernicke v. Ehrlick, 212 Mo. 386. This duty of the master at common law is horn-book law, and is elementary. Letanovsky v. Shoe Co., 157 Mo. App. 120; Quinn v. Electric Laundry Co., 155 Cal. 500, 17 Ann. Cas. 1100; Skelton v. Lumber Co., 140 Cal. 511; Buchel v. Gray, 115 Cal. 421; Carlin v. Kennedy, 94 Minn. 141; Greenan v. Eggeling, 30 Pa. Sup. Ct. 253; Cargill v. Towell Sup.

Co., 185 Pa. St. 269; Bartholemew v. Kemmerer, 21 Pa. St. 277; Flynn v. Prince Co., 198 Mass. 224, 17 L. R. A. (N. S.) 568; Kirwan v. Lithographic Co., 197 N. Y. 413, 27 L. R. A. (N. S.) 972; Wilson v. Williamantic Linen Co., 50 Conn. 533, 74 Am. Rep. 653; Hustis v. Bannister Co., 63 N. J. L. 465, affirmed 64 N. J. L. 279; Pierce v. Conterville Mfg. Co., 25 R. I. 512; Galveston Oil Co. v. Thompson, 76 Tex. 235; Podvin v. Pepperell Mfg. Co., 104 Me. 561, 129 Am. St. Rep. 411; Rooney v. Sewell Co., 161 Mass. 153; Connelly v. Hamilton Woolen Co., 163 Mass. 156; Lewis v. Simpson, 3 Wash. 541; Swoboda v. Ward, 40 Mich. 420; Strickland v. Capitol City Mills, 74 S. C. 16, 7 L. R. A. (N. S.) 426; Brooks v. De Soto Oil Co., 100 Miss. 849, Ann. Cas. 1914A. 656; Homestake Mining Co. v. Fullerton, 69 Fed. 923, 36 U. S. App. 32, 16 C. C. A. 545; Rabe v. Consolidated Ice Co., 91 Fed. 457; Paducah Box Co. v. Parker, 143 Ky. 607; 43 L. R. A. (N. S.) 179; Dettring v. Levy, 114 Md. 273; 4 Thompson on Negligence, sec. 4017; 18 R. C. L. p. 591, sec. 94; Duntley v. Inman, 42 Ore. 334; Westman v. Wind River Lbr. Co., 50 Ore. 137; Reichla v. Gruensfelder, 52 Mo. App. 58; Lemser v. Mfg. Co., 107 Mo. App. 219; Lightner v. Dunham, 195 S. W. 1055; Curtis v. McNair, 173 Mo. 284. (2) Defendant contends that the court erred in submitting to the jury defendant's negligence in failing to exercise ordinary care to keep his machinery in repair, that the boxings and babbitt bearings were old and defective and loosened and the wheels would not mesh true, so there was a wabbling or lateral movement of the gears. This necessitates a reference to the testimony in this regard. These instructions taken together well defined to the jury that issue of negligence. The court enumerated all the defects the jury must find to authorize a recovery, and defendant finds no fault therewith, except he states that there is no evidence in the records that the boxings and babbitt bearings were old, defective and loosened. He finds no fault with the charge that the gears did not mesh true, or that when said machinery was in motion there was a lateral motion of the gears and

a vibration of the frame and bearings of the motor. He thereby tacitly concedes the sufficiency of the evidence to submit these facts. In other words, defendant claims that the jury were required to find all these facts when, in fact, plaintiff was entitled to recover upon proof of defects in the gears and the wobbling of the wheels and vibration of the frame. Defendant then, practically concedes that all the grounds which he now says were necessary to a recovery, were contained in this instruction and supported by evidence; but he makes complaint that plaintiff assumed the burden of proving more facts than were necessary to a recovery.

RAGLAND, C.—This is an action for personal injury caused, as it is alleged, by the negligence of defendant. Plaintiff recovered judgment for $10,000, and the defendant appeals.

At the time of his injury, plaintiff was employed by defendant as a "handy man" and laborer in one of the machine shops of the St. Louis & San Francisco Railroad Company, of which defendant is receiver, located at the City of Springfield. As an incident to such employment plaintiff was required to clean and wipe the dust and grease off of a certain electric motor and the shafting through which the power was transmitted from it to a large punching machine. This motor was completely enclosed in a housing and was supported by a metal frame bolted to the concrete floor on which it rested. It faced south, and projecting from the center of it in that direction there was a shaft that revolved as the motor did. On this shaft, and so attached that it revolved with it, there was a cogwheel six inches in diameter. This small cogwheel at a distance of about eight inches from the motor cover meshed with a larger one, twenty-six inches in diameter, on a shaft immediately connected with the punching machine, and thus by the means of these cogwheels or gears and their respective shafts the power was communicated from the motor to the machine. The accompanying cut is from a photograph of the motor and gears intro-

duced in evidence on the trial below.  A great deal was said by the witnesses as to the locations of the boxing and bearings on the shafts or axles on which are the two cogwheels.  As one of the specifications of negligence has for its basis the alleged defective condition of these boxing and bearings, the evidence in respect to their several locations is important, yet as the witnesses when testifying on the subject had photographs before them and merely said, for example, "There is a boxing," or "Here is a bearing (indicating)," without the record in any way disclosing what the witnesses indicated, the whole of their testimony as to such locations is obscure, and some of it conveys no meaning at all.  However, the photograph shows that the axle on which is the small cogwheel extends from its support south of the wheel north through the frame work of the motor.  It appears to be enclosed within boxing at the north end where it projects through the motor, and also between the frame and the cogwheel and between the wheel and its support at the south end.  It evidently has two bearings in the motor frame and one where it is supported at the south end.  The shaft revolved by the large cogwheel is parallel with the one on which is the small one, about sixteen inches west of the latter, similarly boxed and has its bearings on the same supports.  The boxing and bearings of these shafts, it is said, were lined with babbitt.  The bottom of the large cogwheel was about three inches and the two shafts about sixteen inches from the floor.  The top of the motor housing seems to have been about the same distance from the floor as the top of the large cogwheel, about two and a half feet.  When the motor and gears were in operation the small cogwheel made approximately 1200 revolutions a minute and the large one in proportion.  The cogs were two and a fourth inches wide and revolved upward.  The motor and gears were enclosed by shields or other barriers on the north, west and south sides, so that they could be approached from the east side only.  None of the employees of the defendant had any occasion to be near or about them,

except those whose duties required them to inspect, repair, oil or clean them. At the time the machine was originally installed there was a housing or cover that so enclosed both cogwheels that it would have been impossible for any one working on or about it to have come in contact with the cogs. This cover was furnished by the manufacturer as a part of the machine and for a time was so maintained by the defendant. It did not in any way interfere with the practical operation of the machine; notwithstanding, without any apparent reason, it had been removed and its use discontinued for a considerable length of time prior to plaintiff's injury.

At the time of his injury plaintiff was forty years of age and in the possession of all his faculties. He was a general utility man in the defendant's shops where he helped the machinists, looked after the belts and cleaned the motors and machinery. He had been so engaged in a general way during the preceding nine years and consequently was entirely familiar with the operations of shafts, belts and motors and the dangers incident thereto. He had been cleaning the motor in question for about two years. The motor proper was cleaned by blowing the dust and dirt out with compressed air conveyed through the nozzle of a hose applied at the openings in the motor cover. The dust and grease that accumulated on the motor frame and boxing around the shafts was wiped off with a piece of waste. It seems that in connection with one of the grease cups, grease would accumulate on the lower side of the boxing around the shaft of the small cogwheel between it and the motor. This grease would harden and become gummy so that it required considerable pressure of the hand to remove it with the waste. It was while attempting to clean the boxing at this place that plaintiff was hurt. In so doing he got into a stooping or squatting position at the northeast corner of the motor frame, took hold of the ring at the top of the motor cover with his right hand, and with his left, in which he held a piece of waste, he

reached over and back under the shaft of the small cogwheel and began to wipe the grease off of the bottom side of the boxing, when the sleeve of his jacket fed into the cogs and his forearm was drawn up through them and thrown out ground into pulp.

Plaintiff had been required to clean this motor once a week. Prior to about eleven months before he was hurt he had never cleaned it while it was running. At that time a new foreman was put in charge and he directed plaintiff, according to the latter's testimony, to clean the motor while it was running so as not to interfere with the work of the men, as it took about fifteen minutes for the machine to come to a stop after the power was shut off. Thereafter when the motor was to be cleaned, if the punching machine seemed to be idle, although kept constantly running, plaintiff requested the operator to shut off the power, which the latter always did; if the machine was engaged, he proceeded to clean the motor while it and the gears were in motion. He had cleaned it while in motion four or five times before he was hurt. The foreman emphatically denied that he had directed plaintiff to clean the motor while it was running. Other facts necessary to an understanding of the legal questions involved will be stated in connection with their consideration.

The allegations of the petition with respect to the negligence charged are as follows:

"Plaintiff states that his injuries aforesaid were directly caused by the negligence of the defendants, their agents, servants and employees:

"In failing to exercise ordinary care to furnish plaintiff a reasonably safe place to work, in that defendants failed to exercise ordinary care to properly house or shield the gearing and cogwheels to said motor.

"In negligently and carelessly ordering plaintiff to wipe and clean said motor while the same was in operation, instead of permitting plaintiff to clean same after said motor was stopped.

"In failing to exercise ordinary care to keep said machinery in reasonably safe repair, so that same would not be dangerous for plaintiff to work in and about said motor; in that the boxing and babbitt bearings were old, and defective, and were loosened, and the small gear wheel did not mesh true with the larger gear wheel, so that when the machinery was in motion, the lateral movement of the gears and the vibration of the frame of the motor and the bearings on the shafting caused the sleeve on plaintiff's arm to feed into and become caught in the gears thereof.

"In failing to exercise ordinary care to maintain and keep said machinery in reasonably safe condition; and in abandoning the hood and shield which had previously been furnished and fitted to said gearing to protect employees working in and about said dangerous machinery..

"Plaintiff further states that by reason of the different acts of negligence, as aforesaid, acting separately or conjointly, plaintiff was injured as aforesaid, to his damage in the sum of twenty-five thousand dollars."

The answer is a general denial and a plea of contributory negligence.

At plaintiff's request the court instructed the jury with reference to defendant's negligence as follows:

"The court instructs the jury that in determining whether or not the defendant, his agents or employees was negligent as required by the first instruction, you should only consider the following grounds of negligence alleged by plaintiff in his petition, to-wit:

"1st. In failing to exercise ordinary care to furnish plaintiff a reasonably safe place to work, in that defendant failed to properly house or shield the gearing and cogwheels to said motor.

"2nd. In failing to exercise ordinary care to keep said machinery in reasonable safe repair, in that the boxings and babbitt bearings were old and defective and loosened, and the wheels would not mesh true with each other, so that when said machinery was in motion there

was a lateral or wabbling movement of the gears and a vibration of the frame of the motor and bearing of the shafting; . . . and if you find that either one or both of such acts of negligence, if any acting separately or conjointly, directly caused injury to plaintiff and that plaintiff was in the exercise of ordinary care for his own safety, then your verdict will be for the plaintiff under this and the preceding instruction."

For the defendant the court fully instructed the jury as to the facts which, if found by them, would convict plaintiff of contributory negligence. At the close of plaintiff's case and again at the close of all the evidence, the defendant requested the court to direct a verdict in his favor.

Appellant assigns as error the refusal of his demurrers and the giving of plaintiff's principal instruction on the grounds: (1) That the first specification on which the case was sent to the jury did not under the law constitute actionable negligence; (2) that the evidence was not sufficient to take the case to the jury on the second specification; and (3) that plaintiff's negligence was the proximate cause of his injury as a matter of law. Under the view we entertain as to the controlling questions in the case, it will not be necessary to consider other points that are raised.

I. Appellant and respondent seem to agree that, as the alleged acts of omission on the part of the defendant for which plaintiff seeks to fasten liability upon him were those of the receiver of a railroad company,
**Guarding Machine.** the statute requiring dangerous machinery to be guarded has no application. But whether that be so or not, the statute is without influence because the plaintiff did not by his pleading bring his case within its terms. The naked question, therefore, is whether, independently of the statute, negligence can be predicated of defendant's failure to guard the cogwheels. Appellant insists that at common law the master incurs no liability for a failure to guard dangerous machinery; respondent on the contrary asserts that, if

ordinary care requires such machinery to be guarded in order to render the place in which the servant is directed to work reasonably safe, then the master is liable for injuries to the servant resulting from a failure to exercise such care. Recurring briefly to the facts, it appears that the motor and gearing were so fenced about that none of defendant's employees, except those who inspected, repaired, oiled or cleaned them, had occasion to, or could, approach or be about the cogwheels, while in the performance of their work. If the inspection, repairing, oiling and cleaning were done when the machine was not running, then without question there was no necessity for guarding the cogwheels. But plaintiff's case rests entirely on his assertion, which must be assumed as true because supported by the finding of the jury, that he was required to clean the motor and shafting while the machine was in operation. In doing his work under that condition, it became necessary during the course thereof for plaintiff to extend his hand and arm down into the space of eight inches between the gears and the motor and wipe the hardened grease off of the under-side of the boxed shaft of the small cogwheel, in which there was more or less vibration, in immediate proximity to where the cogs of that wheel were feeding into those of the large one while speeding at the rate of 1200 revolutions a minute. The extent of the danger encountered by plaintiff in so doing requires no elaboration. Defendant had a housing for the gears which had been furnished with the machine by the manufacturer. Its use, while in no way interfering with the practical operation of the machine, made it impossible for any one working around or about the cogwheels to be caught or injured by them. On this state of the facts can it be said as a matter of law that the duty owed by defendant to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work did not require the former to maintain the cover around the gears? It is sometimes assumed that statutes requiring dangerous machinery to be guarded were enacted because, regardless of the situation thereof and attending circumstan-

ces, the master at common law is under no duty to guard such machinery. This assumption, it is believed, grows out of efforts to make plain the scope and purpose of the statutes rather than from a consideration of the legal principles applicable to the relation of master and servant. Such statutes usually specify with particularity the machines or parts of machines to be guarded, as well as the circumstances under which they are required to be guarded, and in their exposition the impression is sometimes conveyed that as to machinery not within the terms of the statute, because there is no statutory duty to guard it, the duty to exercise ordinary care in that respect is also absent. Of course no such inference is intended or would be justified by the premises. It is manifest that if a given act were negligent before the passage of a guarding statute, its character in that respect would not be changed in the least by the enactment of such a statute, whether comprehended within its terms or not. In the case at bar, if the statute were applicable, on the facts disclosed, the question of defendant's negligence would be entirely foreclosed and his liability absolutely fixed, but it does not follow as a matter of law, that, because the statute is without application, the defendant was not negligent. The test which determines whether defendant's failure to guard the cogwheels constituted negligence was in no way affected by the passage of the statute and is to be applied wholly apart from any consideration of the statute, and that test is, was such failure, under the facts shown, consistent with the exercise of ordinary care? Considered in the light of such test the situation discloses that defendant had in operation a machine about which he required plaintiff to work, that the danger encountered by plaintiff thereby was speakingly apparent, that at a trifling expense a guard could have been maintained on such machine that would not in any way have lessened the efficiency of its operation, and that had defendant maintained such guard the danger to plaintiff would have been wholly removed. It may be that under an ex-

22—281 Mo.

panding view of social duty the standard of "ordinary care" that is habitually exercised by that rather elusive person, the ordinarily careful and prudent man, has advanced somewhat, but whether it has or not it certainly cannot be said that all men of reasonable minds would now concur in the opinion that the exercise of such care did not require the defendant to guard the machine in question, even though the danger of contact with it was perfectly obvious.

While the courts of this State have always recognized the right of the master to adopt such methods and to select such appliances for the prosecution of his industry as he may see fit, yet they have consistently held that that right must be exercised within the limits of ordinary care. Where a servant has received injury on account of the character of the appliance with which, or the place in which, he was required to do his work, the liability of the master in respect thereto has been invariably determined by the application of the rule which required him to exercise ordinary care in furnishing such place or appliance. In Curtis v. McNair, 173 Mo. 270, 283, we followed the lead of the Supreme Court of the United States in laying down "as a legal principle that in all occupations which are attended with great and unusual danger there must be used all appliances readily attainable known to science for the prevention of accidents, and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence." For us to now hold that, aside from the statute, the master is under no duty to fence or guard dangerous machinery, regardless of the situation or the circumstances, would be for us to put aside fundamental principles that have heretofore guided us in dealing with cognate questions and arbitrarily create an exception that could not be justified on any ground of right or reason.

Appellant's contention that at common law there is no duty to guard dangerous machinery finds apparent support in the decisions of the courts of those jurisdictions that give effect to a doctrine of the as-

sumption of risk that is not entertained in this State. Under the rule that obtains in such jurisdictions the peril of an unguarded machine, like that growing out of almost any other conceivable condition or defect of place or appliance, if open and obvious, so that the servant has actual or constructive knowledge thereof, is a risk assumed by him. This view of the assumption of risk is the basis of the decisions referred to. [Rooney v. Sewall Cordage Co., 161 Mass. 153; Podvin v. Mfg. Co., 104 Me. 561.] The same courts that rendered those decisions hold the master liable for injuries caused by a negligent failure to fence a dangerous machine where there is no assumption of the risk, as for example, where the danger is unknown to the servant because hidden or latent. [Flynn v. Prince, etc. Co., 198 Mass. 224; Wilson v. Linen Co., 50 Conn. 433; McDonald v. Steel Co., 140 Mich. 401; Turner v. Lumber Co., 119 N. C. 387.] As it is the rule in this State, to which there is no exception, that the servant never assumes a risk that grows out of the master's negligence, however plain or obvious—that the risk he does assume is the peril incident to the service remaining after the master has exercised ordinary care (Williams v. Pryor, 200 S. W. 53), it is apparent that cases from other States like those cited above, instead of sustaining appellant's position, are persuasive authority for the contrary holding.

Cole v. Lead Co., 240 Mo. 397; Czernicke v. Ehrlick, 212 Mo. 386, and Lore v. Mfg. Co., 160 Mo. 608, were cases involving the construction of our guarding statute. In them may be found expressions that lend countenance to appellant's contention, but, as such expressions were unnecessary to the decisions of the questions then before the court, they cannot be regarded as having the binding force of precedent. Bair v. Heibel, 103 Mo. App. 621, was a case where plaintiff had been injured by coming into contact with cogwheels. The facts and the petition brought the case within the statute, but to avoid a reversal on account of erroneous instructions, it appears that the plaintiff on appeal en-

deavored to shift his position and hold the defendant on a common-law liability. His instructions, however, on the facts, were equally faulty under that theory. In the course of the opinion the court said (without expressly deciding, because it was not necessary to do so): "It seems there is no rule of the common law requiring dangerous machinery to be fenced or guarded." But the same court in the later case of Letanovsky v. Shoe Co., 157 Mo. App. 120, without reference to the earlier one, held that it was for a jury to say whether the defendant was negligent in failing to provide a guard for a splitting machine in a shoe factory. And we so hold in the case at bar with respect to the defendant's failure to maintain a guard or cover on the cogwheels which caused plaintiff's injury. [18 R. C. L. 594, sec. 94; Brooks v. Oil Co., 100 Miss. 849, Ann. Cas. 1914A. 656; Dettering v. Levy, 79 Atl. (Md.) 476; Westman v. Lumber Co., 91 Pac. (Ore.) 478; Prattville Cotton Mills v. McKinney, 59 So. (Ala.) 498.

II.   In respect to the alleged negligent failure to repair, the petition charges that, because the boxing and babbitt bearings were old, defective and loose, and the gear wheels did not mesh true with each other, there was a lateral movement of the gears and a vibration of the motor frame and the bearings on the shaft-ing, and that it was this lateral movement of the gears and this vibration of the boxing that he was wiping at the time of his injury that caused plaintiff's sleeve to feed into the cogs. It is appellant's contention that the evidence fails to show either that the boxing and babbitt bearings were old, defective or loose, or that a lateral movement of the gears and vibration of the shaft or boxing caused plaintiff's injury. To set out *in extenso* the evidence relative to this phase of the case would unduly lengthen this opinion. The conditions shown by it may be briefly summarized as follows: The small cog wheel, together with its axle, had a lateral motion of one-thirty-secondth of an inch; this motion was

*Boxing and Babbitts.*

necessarily incident to the operation of the motor and could not have been avoided. The rim of the large cogwheel was slightly inclined toward the axis of its rotation so that when the wheel was in motion it had the appearance of wabbling. The wheel was not loose on the axle and had no play there, but the bore being a little too large for the axle a key had been driven in to tighten it, and this tilted the rim out of line to the extent that during the course of a revolution it projected to either side one-eighth if an inch more than it would have done had it been plumb or set at right angles with the axle. To the extent of the one-thirty-secondeth of an inch of lateral motion of the small wheel and the slight wabble of the large one, the gears did not mesh true, but this failure to mesh true was not caused by worn, defective or loose bearings, and it did not in any respect lessen the efficient operation of the gears. It does not appear that they had any other lateral movement. When the machine was running there was at all times a vibration of the motor frame, gears and shafting. This was more pronounced when the machine was at work. When the shear would first come into contact with the metal plate in the operation of punching a hole in it, there would be a grinding noise of the gears, and for the instant, a slowing of their speed and a tendency of the small cogwheel to pull out and away from the large one. At such times the machine "chattered and quivered." This action, however, was usual and ordinary and did not indicate that the machine was out of repair. One of plaintiff's witnesses, a machinist, expressed the opinion that it was too light for the work for which it was used. In any event, the constant vibration caused the boxing and the motor frame itself to work loose from time to time and constant attention was required to keep them tight. It was also necessary at indefinite intervals to renew the babbitt linings. A careful and painstaking reading of the record, however fails to disclose any substantial evidence that *at the time of plaintiff's injury,* either the motor frame or boxing was loose, or that the boxing and babbitt bearings were

worn, defective or loose. The evidence was not sufficient, therefore, to take the case to the jury on the issue of the defendant's negligent failure to repair.

III. The plaintiff testified that he knew and fully appreciated the danger attendant upon cleaning the boxing next to the revolving cogwheels, but that as the gears fed upward he thought he could reach over the axle and wipe the grease from the under side without his sleeve being caught. Whether the danger of so doing was so great that an ordinarily careful and prudent man would not have attempted it, was, we think, a question for the jury.

**Obvious Danger.**

IV. As the jury were permitted under the instructions to find for plaintiff on either of two specifications of negligence, and as to one the evidence was insufficient to support a finding, the judgment will have to be reversed and the cause remanded for another trial. It is so ordered. *Brown* and *Small, CC.,* concur.

**Two Theories.**

PER CURIAM:—The foregoing opinion of RAGLAND, C., is adopted as the opinion of the court. All of the judges concur.