MRS. ROSA FRADY, ADMINISTRATRIX OF A. L. FRADY, DECEASED, v. THE
HARRIS GRANITE QUARRIES COMPANY.

(Filed 22 January, 1930.)

1. **Master and Servant C b—Evidence of master's negligent failure to
   provide reasonably safe place to work held sufficient.**

   Evidence tending to show that the plaintiff's intestate was required to
   oil certain machinery while in motion on an uncovered platform seven by
   ten feet, elevated one hundred feet from the ground, and that the leg of
   the plaintiff's intestate was caught between the unguarded running gear
   and a timber of the platform, resulting in his fatal injury: *Held*, the
   evidence was sufficient to take the case to the jury upon the question as to
   whether the master had exercised due care under the circumstances to
   furnish his servant a reasonably safe place to work. *Honeycutt v. Brick
   Co.*, 196 N. C., 556, cited and applied.

2. **Trial E g—Error in instruction in this case held cured by rest of
   charge and was harmless.**

   A charge upon the measure of damages recoverable for a wrongful
   death will not be held for reversible error when correct except to the
   use of the words "present value and pecuniary net worth of the deceased"
   when it appears that he had correctly charged elsewhere that it was the
   present value "or" pecuniary worth, etc., and it appears from the verdict
   that the jury did not misunderstand the law thereon.

APPEAL by defendant from *Oglesby, J.*, and a jury, at April Term,
1929, of ROCKINGHAM. No error.

This is an action for actionable negligence brought by Mrs. Rosa
Frady, administratrix of A. L. Frady, deceased, against the defendant
for the death of her husband. The defendant denied any negligence
and set up the defense of contributory negligence and assumption of
risk.

The issues submitted to the jury and their answers thereto, were as
follows:

"1. Was the plaintiff's intestate's death due to the negligence of the
defendant, as alleged in the complaint? Answer: Yes.

2. Did the plaintiff's intestate, by his own negligence, contribute to
his injury and death, as alleged in the answer? Answer: No.

3. Did the plaintiff's intestate assume the risk incident to his em-
ployment, as alleged in the answer? Answer: No.

4. What damage, if any, is the plaintiff entitled to recover of the
defendant? Answer: $8,528."

*D. F. Mayberry for plaintiff.*
*Fred S. Hutchins and Hunter K. Penn for defendant.*

CLARKSON, J. The defendant introduced no evidence, and at the conclusion of plaintiff's evidence made a motion for judgment as in case of nonsuit. C. S., 567. The court below overruled the motion, and in this we can see no error.

The contention of plaintiff is to the effect that defendant owed her intestate the duty, in the exercise of ordinary care, to furnish him a reasonably safe place to work, and that this failure was the proximate cause of the death of plaintiff's intestate. That he was employed as an oiler of certain machinery of defendant; that the machinery was on a platform 7 feet wide and 10 feet long, about 100 feet from the ground; that he went up to the platform on a ladder straight up and down. There was no roof over the machinery. It was open to the elements and no walls to the platform. When the machinery was in operation, it made a great noise and there was some vibration. "It is awfully dusty around there." The machinery was used to run defendant's quarry and rock crushing plant. On the platform was located the head-gear machinery and elevator buckets used in conveying stone from the crusher located below, and the elevator buckets were driven by a large cog wheel, which was about 44 inches in diameter as same ran in mesh with another small pinion wheel that was fastened on a shaft connected with the main drive. This large cog wheel was fastened on a shaft that connected with the elevator buckets. There was an oil cup or bearing located on the shaft on which this cog wheel was fastened, and was located about four inches from said wheel. And there was a similar oil cup or bearing located on the shafting which operated the small pinion gear wheel. The oil cup or bearing on the shaft supporting the large cog wheel was about forty inches from the nearest edge of the platform, and the oil cup on the shafting operated by the small pinion wheel was about one foot from the edge of said platform. These oil cups extended from 8 to 10 inches above the shafting or bearing and contained about two pounds of cup grease, and were filled when they got empty, but usually when the machinery was standing. There was no guard rail around any of the machinery except a little slant something like three-quarters of an inch by four or five inches which was located at a point almost shoulder high.

It was the duty of plaintiff's intestate to oil the machinery when in motion; to do this he had to come very close to the unguarded machinery. In order for the plaintiff's intestate to reach the oil cups, either to refill or inspect same, it was necessary for him to come within four inches of the large cog wheel as above set out, and to come within the same distance of the small pinion wheel which worked in mesh with the large cog wheel, and he had to come in close proximity to the ex-

posed and unguarded cogs. It can be inferred there was dust that naturally got on the platform. While on the platform to oil the machinery, on 30 March, 1927, plaintiff's intestate's right leg was caught between the gear and timber and he was fatally injured before the machine could be stopped.

Under the facts in this case, we think there is sufficient evidence to be submitted to the jury. We think the facts are somewhat similar to and as strong as those in *Honeycutt v. Brick Co.,* 196 N. C., 556.

In *Brooks v. DeSoto Oil Co.,* 100 Miss., p. 849, 31 Am. & Eng. Anno. Cases, note p. 658, it is said: "A number of recent cases support the doctrine that even in the absence of a statutory requirement it is the master's duty to guard shafting, set screws, etc., or at least that the question of the master's negligence in failing to guard such appliances is one for the determination of the jury," citing numerous authorities. *Boswell v. Hosiery Mills,* 191 N. C., at p. 556. See *Tisdale v. Tanning Co.,* 185 N. C., 497; *Maulden v. Chair Co.,* 196 N. C., 122; *Street v. Coal Co.,* 196 N. C., 178; *Mills v. Mfg. Co., ante,* 145; *West v. Mining Co., ante,* 150.

The defendant excepts to the following from the charge: "If you should find by the greater weight of the evidence she is entitled to recover, the court instructs you that the measure of damages is the present value and the net pecuniary worth of the deceased, to be ascertained by deducting the cost of his own living expenses from his gross income, based upon his life expectancy." The charge is correct with the exception that the court should have charged "present value *of* (instead of *and)* the net pecuniary worth of the deceased." The court later charged fully and sufficiently the basis on which to enable the jury to make their estimate. The plaintiff's intestate was 47 years old, his expectancy was some 23 years. He was making $4.40 a day, and his living expenses were about $10 a week. From the amount of the verdict rendered we do not think the error was prejudicial. *Benton v. R. R.,* 122 N. C., 1007; *Purnell v. R. R.,* 190 N. C., 573.

From a careful reading of the charge, it was exceptionally fair to the parties to the action.

We find no prejudicial or reversible error.

No error.