OTTO R. SIMON v. ST. LOUIS BRASS MANUFACTURING COMPANY, Appellant.

Division One, April 6, 1923.

1. **DANGEROUS MACHINERY: Application of Statute.** The statute was intended to cover all appliances, machines and machinery in manufacturing plants, and to extend its protection to all persons employed in such establishments, whether working at or with the machine or about them; and a machine is dangerous in such sense that the employer is required to guard it, if, in the ordinary course of human affairs, danger may be anticipated from the use of it without protection.

2. ———: **To Guard: A Term of General Significance: May Mean to Fence.** To guard dangerous machinery is to provide it with a guard, that is, any device, fixture or attachment designed to protect or secure against injury. The word "guard" cannot be restricted to mere devices that may be attached to the machine itself. With respect to many machines, or parts thereof, and in many situations, it is not only possible, but necessary, to "fence" them in order to afford protection to those required to work in their proximity. The term is of general significance, and its application in specific cases is to be determined from the character of the machine and the nature of the peril to be avoided.

3. ———: ———: **Instruction: Placing of Machine.** An instruction requiring the jury to find that the machine was "so operated as to be dangerous to the plaintiff while engaged in his ordinary duties" is authorized by the statute requiring a machine to be guarded when is it "so placed as to be dangerous to persons employed therein or thereabouts."

4. ———: ———: ———: **To Safely and Securely Guard: Insurer of Safety.** An instruction authorizing the jury to find defendant guilty of negligence if they further find that defendant could have safely and securely guarded the machine "so as to have prevented plaintiff's hand from being caught" and failed to do so, does not in effect impose upon defendant the liability of an absolute insurer of plaintiff's safety, where the evidence is plain and unequivocal that had the machine been provided with the safety device described by the expert witnesses and in general use, plaintiff's hand would not have been caught.

5. ———: **Guarding: Manner Determined by Master: Ordinary Care.** The statute leaves it to the master to determine, primarily, whether machinery needs guarding or fencing in contemplation of dangerous accidents to employees, and, if so, the means and manner of complying with its requirements, but subject to the duty, which is absolute, to exercise all ordinary care with respect to the matter. If there is in fact a practical safety device known and in general use which will prevent injury to the operator of a dangerous machine, the master fails to exercise ordinary care, and is guilty of negligence, if he fails to guard the machine with such device.

6. **EXCESSIVE VERDICT: $15,000: Loss of Fingers: Scar Tissue.** Plaintiff was forty-seven years of age at the time his hand was caught between the dies of a brass-molding machine. The thumb is in good shape, but the other fingers are about two-thirds gone; there is some scar tissue on what remains of the fingers, and a linear scar running along the thumb, and the ends of the nerves are caught in the scars, from which he will suffer pain as long as the scar tissue remains. Four months after the accident he went to work and has continuously been employed since as an attendant at a city bath house, but the evidence does not show his earnings. *Held,* that a verdict for $15,000 is excessive by $6,500.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Miller,* Judge.

AFFIRMED (*upon condition*).

*Kelley, Starke & Moser* and *Charles E. Morrow* for appellant.

(1) The court erred in refusing defendant's instruction in the nature of a demurrer to the evidence at the

close of plaintiff's evidence and again at the close of all the evidence. The court withdrew from the consideration of the jury by instructions all the assignments of negligence in the petition except the charge that the defendant failed to guard the machine in question, because there was no evidence tending to prove the same, and submitted only the question of failure to guard. There was no evidence to sustain that assignment of negligence, for the reason that the device which the plaintiff's expert claimed was a guard is not covered by or required by the statute to be placed on the machine. It was not a guard at all, but a device to warn the operator of the descent of the upper die and to force his hand from under the same after it had been placed thereunder. R. S. 1919, sec. 6786; Colliott v. American Mfg. Co., 71 Mo. App. 170; Phillips v. Shoe Company, 178 Mo. App. 196, 204. (2) Instruction numbered 1 given by the court at the request of plaintiff is erroneous. (a) It places a greater duty upon the defendant in guarding the machine than is required by statute. R. S. 1919, sec. 6786. (b) It makes the defendant liable if it failed to guard the machine so as to prevent plaintiff's hand from being caught therein while engaged in his ordinary duties. (c) It places the duty on defendant to guard the machine in question if it were so operated as to be dangerous to plaintiff, when the statute only required the machine to be guarded if it were so placed as to be dangerous to the plaintiff. R. S. 1919, sec. 6786. (d) It erroneously submits to the jury the question that the machine was constantly in operation and associates this fact with the fact that the machine was so operated as to be dangerous to the plaintiff, and creates the duty on the defendant to guard the same if it were constantly in operation and so operated as to be dangerous to the plaintiff, when the statute creates no such duty. R. S. 1919, sec. 6786. (3) The verdict and judgment are excessive. Young v. Lusk, 268 Mo. 625, 640; Lock v. Railroad Co., 219 S. W. 919; Hulse v. Railway, 214 S. W. 150; Davenport v. Electric Co., 242 Mo.

111; Kibble v. Railroad, 227 S. W. 42; Hosheit v. Lusk, 190 Mo. App. 431.

*Foristel & Eagleton* for respondent.

(1) The demurrer was properly overruled. R. S. 1919, sec. 6786; Phillips v. Shoe Co., 178 Mo. App. 196; Simpson v. Iron Works, 249 Mo. 376. (2) Instruction numbered 1, given by the court at the request of the plaintiff, was proper in every respect. R. S. 1919, sec. 6786; Phillips v. Shoe Co., 178 Mo. App. 196; Simpson v. Iron Works Co., 249 Mo. 376. (3) The verdict of the jury was not excessive. Wagner v. Gilsonite Const. Co., 220 S. W. 890; Evans v. General Explosives Co., 239 S. W. 487.

RAGLAND, J.—This is an action for personal injuries based on an alleged negligent failure to guard a dangerous machine in obedience to the mandate of the statute.

The injury occurred October 29, 1919, while plaintiff, pursuant to his employment by defendant, was working at a machine in its manufacturing establishment.

The machine was a stamping press operated by electric power. It had an upper and lower die, the lower die remaining stationary and the upper die descending and ascending automatically while the machine was in operation. There was a "blank holder" through which the upper die moved immediately before coming into contact with the metal to be stamped. The upper die moved up and down seven times per minute through a space of from ten to twelve inches. The blank holder descended a little ahead of the upper die, and its function was to hold the material in place on the lower die while the upper die stamped it. In the center of the lower die there was a device called a knock-out pin, or an ejector, which operated automatically, and which served to remove from the lower die the metal after it had been

pressed and shaped. The plaintiff stood in front of the machine, and placed the material on the lower die, and a fellow-workman stood behind it and took the material away after it had been pressed and loosened by the ejector.

At the time plaintiff was injured he was engaged in putting beading or ornamental work on pieces of metal which had been pressed into the shape of a pie pan. The pans were stacked on the base of the machine on his left; on his right there was a small tub containing a solution of oil and water. Owing to the fact that the pans had been dipped into the solution at the time they were shaped, they adhered, and it was necessary to use a screw driver or similar appliance to separate them. In putting them through the machine the second time for the purpose of beading them, it was necessary, in order to keep the dies lubricated, that every other pan be again dipped into the solution. Plaintiff's method of doing the work was this: He would first loosen a pan with a screw driver held in his right hand, dip the pan into the solution, transfer it to his left hand and with that hand place it on the lower die. As soon as he had so placed the pan, he immediately picked up another and had it ready for placing as soon as its predecessor had been removed. On the occasion referred to, while he was attempting to place one of these pans on the lower die, his hand was caught and crushed by the upper die and blank holder in their descent. The machine was not equipped with any device intended to protect the operator from mishaps of this kind.

One Ross, called as a witness by plaintiff, testified that he was a tool-maker and designer; that he had had thirty-two years of experience around machinery of all descriptions, including presses similar in design to the one in question; and that such machines could be safely and securely guarded without interfering with their practical operation. After describing devices of various designs which he said were used to guard presses similar

Simon v. Brass Manufacturing Co.

to the one occasioning plaintiff's injury, he testified on cross-examination in part as follows:

"THE COURT: Q. Suppose he has his hand all the way in there and these things close up. How does it knock his hand out? A. It pushes his hand down—when the guards come down it pushes it out of the way. Some guards are controlled so they shove them out of the way and they are padded so it won't injure you. They can shove on an angle.

"THE COURT: Q. It would push his hand out? A. You bet you.

"Q. Come here and explain how that works, how that guard you say will push your hand out after setting the pan there. (Witness standing in front of wooden model:) A. Take it for granted that the plunger is up and the guard is in this position. When the plunger comes down, this guard precedes the plunger and pushes your hand away before the upper die strikes the lower die, gives you time.

"Q. It serves only as a warning—it doesn't pull it out? A. No, sir; it pushes it away.

"Q. It slaps your hand and notifies you, don't it? A. Give me a blank and I will demonstrate it for you.

"Q. Here is a pan. A. The other one will do. (Witness demonstrating:) I shove that pan in. I have to get it in in a certain time. I won't hold my hand there; if I do, this guard comes and pushes my hand away.

"Q. You are assuming that with this size of pan and this size of model, it would push it away. Suppose these parts were just twice as big as that? A. That doesn't make any material difference.

"THE COURT: Q. It would all be in proportion? A. It would be in proportion.

"Q. You would not be able to get them in there at all—that is only the warning to the operator to get his hand out? A. It is a warning, and pushes his hand away.

"Q.   Where did you see a guard?   A.   It is used in every up-to-date shop.

"Q.   Here?   A.   Wagner Electric Company, Century Electric Company and Monarch Weatherstrip Company.

"Q.   On a press like this?   A.   Similar presses."

On direct examination he further testified:

"Q.   These places you mentioned awhile ago in cross-examination—those factories are all in the city of St. Louis?   A.   Yes, sir.

"Q.   And the character of guard you speak about has been on the market and used for a number of years? A.   Some are on the market, and some are specially designed.

"Q.   How many years have they been on the market? A.   Some certain guards for ten or fifteen years.

"Q.   And those particularly you mentioned here? A.   Yes, sir."

Defendant offered no evidence with respect to the possibility or practicability of equipping the machine with a guard.

The petition contained ten specific assignments of negligence, all but one of which were withdrawn from the jury by appropriate instructions.   The one on which the case was submitted was the failure to discharge the alleged statutory duty to safely and securely guard the machine.

The answer was a general denial and a plea of contributory negligence.

At the conclusion of all the evidence the court refused a request on the part of defendant for a directed verdict.   The principal instruction given for plaintiff was as follows:

"The court instructs the jury, that if you find and believe from the evidence that on the 29th day of October, 1919, plaintiff was in the employ of the defendant at its plant referred to in the evidence, and that his ordinary duties required him to work at a large press used for the purpose of beading or stamping various kinds of pans

and other materials, and that on said day while the plaintiff was attempting to place a pan on the lower die of said press his left hand was caught and injured by reason of the upper die of said press or blank holder descending and coming in contact with his said left hand;

"And if you further find and believe from the evidence that at said time and prior thereto said machine was constantly in operation, and that the said press and particularly the upper die, and the blank holder, were so operated as to be dangerous to the plaintiff while engaged in his ordinary duties, and that it was possible for the defendant to safely and securely guard said press, so as to have prevented plaintiff's hands from being caught by the upper die, or blank holder while descending, if you find plaintiff's hand was so caught, without interfering with the practical operation of said press or of said upper die or blank holder; and if you further find that the defendant failed to safely and securely guard said press so as to prevent injury to plaintiff while engaged in his ordinary duties, and that in so failing, if you do so find, the defendant was guilty of negligence.

"And if you further find and believe from the evidence that as a direct result of such negligent failure, if any, on the part of the defendant, the plaintiff was injured, as mentioned in the evidence, and that at said time the plaintiff was exercising ordinary care for his own safety, then your verdict must be in favor of the plaintiff, and against the defendant."

The jury found the issues for plaintiff and assessed his damages at $15,000. From a judgment against it for that amount defendant prosecutes this appeal.

Appellant assigns as error: (1) the refusal of its peremptory instruction in the nature of a demurrer to the evidence, and (2) the giving of the instruction quoted. It also complains that the judgment is excessive.

I.  The first assignment is based on appellant's contention that the evidence wholly failed to show that it was possible to "guard" the stamping press in the sense

in which the word "guard" is used in the statute. The appliance described by plaintiff's expert was a device to warn the operator that the upper die was descending, and to push his hand from under it, if he did not remove it himself in time to avoid contact. It is insisted that such an appliance is not covered by the statute, because it was never intended by the Legislature that an employer should be required to equip his machines with safety devices that would not only warn operators of impending danger, but would remove them, if heedless of the warning, they got into a place of peril; that to "guard" a machine within the contemplation of the statute is to so "fence" it that contact with it will be prevented.

*Application of Statute: To Guard.*

The statute was intended to cover all appliances, machines and machinery in manufacturing plants, and to extend its protection to all persons employed in such establishments, whether working at and with the machines, or about them. [Austin v. Shoe Co., 176 Mo. App. 546, 561.] A machine is dangerous in such sense that the employer is required to guard it, "if, in the ordinary course of human affairs, danger may be reasonably anticipated from the use of it without protection." [Hindle v. Birtwistle, 1 Q. B. (1897) 192.] To "guard" such a machine is to provide it with a *guard,* that is, any device, fixture or attachment designed to protect or secure against injury from it. [Bessler v. Laughlin, 168 Ind. 38.] The upper die of the machine in question moved up and down unceasingly, each of the movements covering precisely the same space and being accomplished within exactly the same time. It was not possible for the hands of the operator in placing pans on the lower die to move with the same uniformity and precision; and a failure on his part to co-ordinate the movements of his left hand with the movements of the machine to such an extent that his hand would be caught between the dies could reasonably have been anticipated. This was the peculiar danger arising from the use of this machine to which the operator, and he alone, was subject, and against which the statute was designed to afford him protection.

The machine could not have been housed, covered, or fenced and at the same time operated, but it could have been equipped with a safety device which would have secured the operator from injury and that would have been to "guard" it within the meaning of the statute.

What has been said is not intended to restrict the meaning of the word "guard" to mere devices that may be attached to the machines themselves. With respect to many machines, or parts thereof, and in many situations, it is not only possible but necessary to "fence" them in order to afford protection to those required to work in their proximity. The term is of general significance, its application in specific cases is to be determined from the character of the machine and the nature of the peril to be avoided.

II. (1) The first criticism of the instruction given for plaintiff is that it predicates liability in part on a finding by the jury that the machine was "so *operated* as to be dangerous to the plaintiff while engaged in his ordinary duties," whereas, the statute requires a machine to be guarded only when it is "so *placed* as to be dangerous to persons employed therein or thereabout." This is but a play upon words. The instruction required the jury to find that by reason of the manner of its operation the machine was dangerous to the operator unless guarded. "So operated," as used in the instruction, comprehended the *placing* of the machine with reference to the operator—his physical relation to it and its movements; it included not only the proximity of his person to the machine, but the putting of his hand between dies that came together at rapidly recurring intervals. Appellant's criticism of the instruction in this respect is without substance.

*Placing Machine.*

(2) The further objection is made that the instruction placed upon defendant the duty to have so guarded the machine as to have prevented injury to plaintiff, whereas, the statute merely requires that a dangerous machine shall, when possible, be safely and securely guarded; that the in-

*Insurer of Safety.*

struction in effect imposed upon the defendant the liability of an absolute insurer of plaintiff's safety.

It is true that the instruction authorized the jury to find defendant guilty of negligence, if they further found that it could have safely and securely guarded the machine "so as to have prevented plaintiff's hand from being caught" and it failed to do so. But the evidence was plain and unequivocal that had the machine been provided with the safety device described by the expert witness, plaintiff's hand would *not* have been caught. This device was not a creature of the witness's imagination, but one that had been in general use in connection with such machines in the city of St. Louis for a period of ten or fifteen years. When confronted with this evidence the defendant stood mute. It is true of our statute, as was said of a similar enactment, it leaves, primarily, the master to determine whether a situation needs guarding or fencing in contemplation thereof, and, if so, the means and manner of complying therewith, subject to the duty, which is absolute, to exercise all ordinary care with respect to the matter. [Willette v. Paper Co., 145 Wis. 537.] Speaking to the facts of the instant case, if there was in truth a safety device known and in general use which would have prevented injury to the operator, then it is entirely clear that defendant, in failing to guard its machine with such device, failed to exercise ordinary care. The efficiency claimed for the device was entirely for the triers of fact who not only heard the oral testimony but saw the ocular demonstration made with a model of the machine before them.

III. The following from appellant's "Statement and Brief" is a fair summary of the facts as disclosed by the evidence, with reference to the injuries suffered by plaintiff:

**Excessive Verdict.**

"The plaintiff was 47 years old at the time he was injured and was earning $20 per week. His injuries consisted of the following:

Simon v. Brass Manufacturing Co.

"The index finger has one joint left; there are two off; the second finger has about three-quarters of the first joint from the knuckle still left; the third finger is practically gone, the joint is all right, but there is a little bit of the phalanx left, the bony part of the first joint. The joint of the little finger is intact and all of the first joint is present; the knuckle joints are all intact; the thumb is in good shape, and there are no other injuries to the hand except that he can't flex these stumps as good as he would be able to do if he had the fingers on there. There is some scar tissue on the middle fingers which would lead a physician to believe might cause pain. There is a linear scar running across the stump, and the ending of the nerves are caught in the scar. Dr. Ambrose, who examined the plaintiff's hand only for the purpose of testifying, stated that the plaintiff will probably suffer pain as long as there are scar tissues on the ends of the middle fingers.

"It does not appear from the evidence that there were any serious complications, such as infection and subsequent operations, or that the plaintiff experienced and underwent any unusual pain and suffering. In other words, plaintiff made an uneventful and permanent recovery. He was able to accept employment and went to work four months after the date of his injury and was continuously employed thereafter. At the time of the trial the plaintiff was employed as an attendant at one of the city bathhouses in St. Louis, but it does not appear from the evidence what he was earning."

As measured by the standard afforded by the rulings of this court in many cases, where the injuries inflicted were similar to those sustained by the plaintiff in this, the verdict was excessive by $6,500. [Hulse v. Ry. Co., 214 S. W. 150.] If, therefore, the plaintiff will enter a remittitur of $6,500 within ten days, as of the date of judgment, the judgment will be affirmed; otherwise, it will be reversed and the cause remanded for another trial. All concur.