[Civil No. 2136.   Filed August 7, 1924.]

[227 Pac. 986.]

# SOUTHWEST COTTON COMPANY, a Corporation, Appellant, v. THE VALLEY BANK, a Corporation, SARIVAL STORAGE COMPANY, a Corporation, G. P. NEVITT and L. ZELLNER, Appellees.

1. ESTOPPEL—"WAIVER" DEFINED.—Waiver is a voluntary and intentional relinquishment of a known right, or such conduct as warrants an inference of relinquishment of such right.

2. ESTOPPEL—INTENTION IS FOUNDATION OF WAIVER INFERRED FROM CONDUCT, AND IS QUESTION OF FACT IF REASONABLE MINDS WOULD DIFFER.—Intention is the very foundation of waiver inferred from conduct, and, if reasonable minds would differ as to the proper inference, waiver becomes question of fact, determinable from the evidence submitted.

3. LANDLORD AND TENANT—RELEASE OF COTTON WAREHOUSE RECEIPTS TO TENANT HELD TO WAIVE LANDLORD'S LIEN AGAINST BANK MAKING LOAN TO TENANT.—Landlord by releasing to tenant warehouse receipts for cotton grown on leased premises and ginned by landlord with knowlelge that the tenant was borrowing from a bank, *held* to have waived landlord's lien on the cotton as against the bank's lien.

4. WAREHOUSEMEN — RECEIPTS NEGOTIABLE. — Warehouse receipts are negotiable instruments.

5. ESTOPPEL—WAIVER DISTINGUISHED FROM ESTOPPEL—MISLEADING A PERSON TO HIS PREJUDICE UNNECESSARY TO WAIVER.—As distinguished from estoppel waiver depends, not on what one causes another to do, but upon what one himself intends to do, and does not necessarily imply that some person has been misled to his prejudice.

APPEAL from a judgment of the Superior Court of the County of Maricopa.   F. H. Lyman, Judge. Affirmed.

1.   See 27 R. C. L. 904.

2.   See 27 R. C. L. 912.

3.   See 27 R. C. L. 976.

4.   Negotiability of warehouse receipts, see notes in 84 Am. Dec. 752; 17 Ann. Cas. 670.   See, also, 27 R. C. L. 966, 967.

5.   See 27 R. C. L. 905.

See 21 C. J. 1116; 40 Cyc. 252, 253, 256, 257, 261, 270, 417.

(Rehearing denied October 10, 1924.   See 27 Ariz.
——, 229 Pac. 98.)

Mr. Richard E. Sloan, Mr. C. R. Holton, and Mr.
E. G. Scott, for Appellant.

Messrs. Kibbey, Bennett, Gust & Smith, Mr. Samuel
White, and Mr. G. P. Nevitt, for Appellees.

WINDES, Superior Judge.—This is a suit by the
plaintiff Sonthwest Cotton Company to foreclose
a landlord's lien upon 220 bales of cotton located
at the warehouse of the Sarival Storage Company
at Gilbert, Arizona. The plaintiff under date of
December 26, 1919, subleased 520 acres of land to the
defendant Zellner for a period of two years from
January 1, 1920, to December 31, 1921. Zellner as-
signed this sublease to the defendant G. P. Nevitt, who
farmed the land during the season of 1920 and grew a
crop of cotton thereon. This cotton was ginned at
the gin of the Southwest Cotton Company in Gilbert
and stored in the yards of the Sarival Storage Com-
pany at that place, which storage company issued
warehouse receipts therefor in the name of the de-
fendant G. P. Nevitt. Between June 12, 1920, and
March 4, 1921, Nevitt borrowed at different times
from the defendant, the Valley Bank, the aggregate
sum of $65,850. The warehouse receipts were de-
livered at different times to Nevitt by the Southwest
Cotton Company and the Sarival Storage Company,
and Nevitt in turn indorsed the same and delivered
them to the Valley Bank as security for these loans.

The trial court rendered judgment that the Valley
Bank had a first and prior lien upon the cotton and
the warehouse receipts therefor except as to the lien
for storage charges, and declared that such lien of the
Valley Bank was superior to any right or lien of the
plaintiff Southwest Cotton Company. The plaintiff

brings this appeal claiming that the court erred in adjudging that the lien of the Valley Bank was superior to the landlord's lien of the plaintiff for the rent due from the defendants Zellner and Nevitt.

The appellee in order to sustain the action of the trial court contends, first, that the plaintiff did not prove that the cotton represented by the warehouse receipts was raised on the land rented from the plaintiff; second, that the bank at the time it received the warehouse receipts from Nevitt as security had no notice, actual or constructive, that the cotton represented by the receipts was grown upon the land rented from the plaintiff; and, third, that if the plaintiff ever had any landlord's lien for its rent it has by its conduct waived the same.

We think the record fairly establishes that the cotton represented by the receipts held by the bank was grown on the land leased from the plaintiff, and we also think the record fairly shows that the Valley Bank had knowledge of such facts as would charge it with actual notice of the landlord's lien on the cotton. The next question therefore is whether the plaintiff can be held to have waived its lien.

The testimony shows that the bank originally agreed to loan Nevitt $35,000 upon a crop mortgage. This mortgage was never made and subsequently it was understood between the bank and Nevitt that warehouse receipts should be delivered to the bank as security. On October 13, 1920, Nevitt wrote a letter to one Mr. Hinkle of the Southwest Cotton Company stating he had borrowed funds from the bank and that he had informed Mr. Moore of the bank that he would leave all bale receipts with the Southwest Cotton Company and that "if he should, during my absence, call for bale receipts as security for the loan, I instructed him to call you by telephone and request the amount of bale receipts necessary as security." The letter to Mr. Hinkle further stated that should Mr.

26 Ariz.—36

Moore call for the receipts "to deliver same in any amount requested." Pursuant to the request embodied in this letter Mr. Hinkle advised Mr. Moore that he would turn the receipts over to Moore as he wanted them.

The plaintiff, Southwest Cotton Company, in June, 1921, made a written demand upon the Sarival Storage Company for the possession of the cotton for the reason that Nevitt had failed to pay his rent. This demand states that Nevitt's lease "terminated on January 14, 1921." Nevitt testified that the lease terminated about February 8, 1921, because he was "broke." These warehouse receipts were delivered to Nevitt at different times and in different amounts between the latter part of December, 1920, and March 5, 1921. Nevitt testified that he got the last large bunch on March 5, 1921, which were delivered to the bank during that month. Mr. Moore further testified that the bank loaned Nevitt additional funds to pay the Southwest Cotton Company for ginning, seed, and other things in order to secure possession of these last receipts, and the record shows that the bank did make Nevitt a loan of $4,000 on March 4, 1921. In fact subsequent to January 1, 1921, and prior to the filing of this suit, the bank loaned Nevitt the aggregate sum of $6,850.

The Sarival Storage Company, who issued the warehouse receipts, is a company organized and controlled by the Southwest Cotton Company and the plaintiff consequently actually had power of granting or withholding delivery of the bale receipts to Nevitt. Therefore the decision of the court will be based upon the theory that the receipts were in possession of the Southwest Cotton Company and by it delivered to Nevitt.

While there are numerous decisions declaring what is, and what is not waiver and whether there has been a waiver under a particular set of facts, yet counsel

have cited no case and the court has been unable to find any wherein the facts are such as they are here. It therefore becomes necessary to resort to the general fundamental principles of the law of waiver.

A waiver is a voluntary and intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. 40 Cyc. 252; *Easterwood* v. *Three-for-One Oil Co.* (Tex. Civ. App.), 246 S. W. 671; *Springfield Gas & Electric Co.* v. *Southern Surety Co. of Oklahoma* (Mo. App.), 250 S. W. 78.

In *Springfield Gas & Electric Co.* v. *Southern Surety Co. of Oklahoma, supra,* the court in laying down the fundamental definition of waiver states as follows:

"A waiver occurs when 'one in possession of any right, whether conferred by law or by contract, and with full information of the material facts, does or forbears the doing of some things inconsistent with the existence of the right or his intention to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterward.' . . . A consideration which is necessary to support a contract is unnecessary to support a waiver. A waiver may even take place in consequence of laches merely or in consequence of acting inconsistently with the idea of insisting upon the right which is waived, and may be shown by conduct as well as by express words."

Where a waiver is not express but must be inferred from conduct, it is essentially a matter of intention. In fact intention is the very foundation of such a waiver, and, if the conduct from which such intention must be inferred is such that reasonable minds may differ as to what the inference should be whether there is a waiver becomes a question of fact to be determined from the evidence submitted. *Whipple* v. *Prudential Ins. Co. of America,* 222 N. Y. 39, 118 N. E. 211.

The inquiry therefore is: Was the conduct of the plaintiff in connection with the delivery of the receipts to Nevitt such as would warrant an inference of the fact that the plaintiff voluntarily and intentionally relinquished its landlord's lien as against the Valley Bank? We think this must be answered in the affirmative.

The Southwest Cotton Company knew that its tenant Nevitt borrowed money from the Valley Bank for the purpose of assisting in the growing of the crop. It exhibited its willingness, through one of its officers, to deliver the receipts to the bank as security for the loan. The "last large bunch" of these receipts were released by the plaintiff to Nevitt on March 5, 1921, nearly two months after the lease had been terminated by the Southwest Cotton Company because Nevitt was financially unable to meet his obligations. The warehouse receipts are negotiable instruments, and we fail to see how any reasonable person, under all the circumstances of this case, could assert that the Southwest Cotton Company intended other than to relinquish its claim to a lien on this cotton. The whole record presents too forceful an argument to admit of any other reasonable conclusion. We all know that had the plaintiff intended to enforce its lien it certainly would never have released those warehouse receipts nearly two months after the lease had been terminated and Mr. Nevitt had "gone broke." Reasonable men do not transact business in this manner.

It is argued by counsel for appellant that one of the essential elements of waiver is that the party claiming the waiver must be misled to his injury. While there are some authorities indicating this, it is an inaccurate statement of the law of waiver and is confusing a waiver with an estoppel. As distinguished from the estoppel a waiver depends, not on what one causes another to do, but rather upon what one him-

self intends to do, and it does not necessarily imply that some person has been misled to his prejudice. 40 Cyc. 256; *Hayes* v. *Manning,* 263 Mo. 1, 172 S. W. 897; *Ford* v. *Ott et al.,* 186 Iowa, 820, 173 N. W. 121; *Eau Claire Dells Improvement Co. et al.* v. *City of Eau Claire,* 172 Wis. 240, 179 N. W. 2; *Labidee* v. *City of Pierre,* 43 S. D. 31, 177 N. W. 499.

In the case of *Hayes* v. *Manning, supra,* the court stated the difference between an estoppel and a waiver in the following language:

"An estoppel most briefly stated is a previous act which precludes denial. While difficult at times to distinguish estoppel from waiver, these distinctive differences may be noted: Waiver, as defined, is the voluntary surrender of a right, while estoppel is the inhibition to assert a right from the mischief that has followed; waiver involves knowledge and intention, while estoppel may arise where there is no intention to mislead; waiver depends upon what one himself intends to do, while estoppel depends rather upon what he has caused his adversary to do; waiver may affect the other party beneficially, while estoppel results from an act which operates to the injury of the other party; waiver does not imply that one has been misled to his prejudice, while estoppel always involves this element."

The case of *Eau Claire Dells Improvement Co.* v. *City of Eau Claire* stated the principle in this language:

"Waiver is generally defined as the voluntary relinquishment of a known right, and it may be a defense, though no detriment to the adverse party is shown. In estoppel *in pais,* the element of loss or detriment to the adverse party must appear."

Appellant also argues that the plaintiff had no legal right to withhold delivery of these receipts to Nevitt because the rent was not due, and that the plaintiff should not be penalized for simply performing its legal duty. This argument fails when we observe that a large portion of these receipts were delivered to

Nevitt about two months after the lease was terminated because of the failure of Nevitt to meet his obligations. It might be argued that this would apply only to the last receipts. However, we think that this is evidence of the plaintiff's intention in delivery of all receipts.

We are unable to reach any other conclusion except that the plaintiff intended to relinquish its claim to a landlord's lien on this cotton. Certainly by its conduct it lulled the bank into a feeling of security, and it would be unfair under such circumstances to permit the plaintiff at this time to insist on a prior lien. For the reasons above set forth the judgment will be affirmed.

McALISTER, C. J., and ROSS, J., concur.

NOTE.—Judge LYMAN being disqualified, the Honorable DUDLEY W. WINDES, Judge of the Superior Court of Maricopa County, was called to sit in his stead.