**Lenore M. WHITMIRE, Plaintiff in Error,**

**v.**

**John F. ZOLBE, Sr., Sarah Zolbe, John F. (Jack) Zolbe, and Zolbe Oil Company, a partnership, Defendants in Error.**

**No. 39289.**

Supreme Court of Oklahoma.

June 15, 1965.

W. R. Lawrence and Gomer Smith, Jr., of Smith, Johns and Neuffer, Oklahoma City, for plaintiffs in error.

Mathews, Buck & Cain, Oklahoma City, for defendants in error.

BLACKBIRD, Justice.

The parties to this appeal appear in the same relative positions they occupied in the trial court and will hereinafter be referred to by name, or by their trial court designations of "plaintiff" and "defendants".

Plaintiff's brief characterizes the action as for "Damages by Trespass on Real Property." The action is more specifically said to concern defendants' alleged interference with, or destruction of, an easement for sewer purposes plaintiff claimed to have across lots owned and occupied by defendants.

Plaintiff claims to have acquired said easement by reason of having purchased, in 1951, realty known as the National Motel, 4001 North Lincoln Boulevard, in Oklahoma City, legally described as Lots 1–7, both inclusive, in Block 1, of said City's Kenwood Second Addition, together with lots described as Lots 6 and 7 in Block 1, of the Irvington Addition on the south side of 39th Street Terrace. Defendants' property is also located on the south side of 39th Street Terrace, and may be legally described as Lots 1–5, both inclusive, in Block 4 of Kenwood Second Addition.

Both plaintiff's and defendants' lots formerly belonged to one J. E. Hagemeister, who constructed houses on plaintiff's lots, and perhaps others in the Kenwood Second Addition, and connected them to a sewer system he constructed, whose laterals were laid underground across Lots 4 and 5 of what is now defendants' property. Said laterals terminated at, and emptied into, a septic tank on plaintiff's Irvington Addition lots adjacent to defendants' property. Hagemeister executed and delivered, in 1945 and 1946, to persons alleged to be defendants' predecessors in title, conveyances of Lots 5 and 6, in Block 4, supra, subject to an easement which plaintiff claimed was for the above mentioned sewer lines and laterals.

In her amended petition, plaintiff alleged, among other things, in substance, that she and her grantors used, and maintained, the above described sewer system without interruption until January 1, 1956, at which time she started having difficulties with stoppages therein. She further alleged that, at a time when she was trying to get the motel in operation the sanitary facilities therein became unusable. Plaintiff's amended petition further alleged that because of complaints made by defendants, Sarah and John F. Zolbe, Jr., that such stoppages had created a condition detrimental to their health, and because of their threats of legal action against her for maintaining a nuisance, she attempted, at a cost of $700.00, to "work out" a substitute sewage disposal plan suggested by Zolbe, but that same proved to be unworkable. The petition further alleged:

"* * * that on the 1st day of June, 1957, the defendants and the defendant partnership having built * * (a) large steel warehouse * * * (on a portion of their lots) * * * plaintiff experienced a complete stoppage of said sewer line and that thereafter on several occasions she called into use the services of a plumber and equipped with a rotor or other device but that after two weeks of repeated attempts to unstop said line she discovered that portions of the line were filled with soil, other portions became blocked with cement, the line collapsed and rendered unusable. That due demand has been made upon the defendants, and each of them, for permission to repair said line, but that same was refused by defendants, * * *."

Plaintiff prayed for a judgment quieting her title to the easement she claimed, as aforesaid, and ordering defendants to permit resumption of her use thereof. She also prayed for loss of profits in her motel

business of $10,000.00, for another $10,-000.00 in exemplary damages, and for the further sum of $725.00 to recompense her for the plumbing bills she allegedly had paid.

Defendants filed an amended answer and cross petition, in which they admitted, among other things, the ownership of the lots plaintiff alleged they owned, between her two parcels of lots, and that they operated a filling station and warehouse thereon, and that a lateral line, existing at the time they acquired their property, extended from plaintiff's motel property, under the surface of their lots along a route, whose exact location was unknown to them, to a septic tank on plaintiff's other lots. Defendants denied, among other things, that they had ever forbidden, or refused, plaintiff the opportunity of cleaning out, or opening up, this lateral line, or had prevented her, or her agents or servants, from coming on their land to do this. In substance, defendants denied that plaintiff's difficulties with her sewer system were due to any act of theirs, and charged that same were the result of certain described defects in, or disabilities of, the system itself. In addition to exemplary damages, defendants sought $5,-000.00 in additional damages because of refuse that allegedly overran their land, and for the foul and noxious odors they were forced to breathe because of plaintiff's clogged sewer system.

After plaintiff had filed a reply and answer to defendants' cross petition, in which, among other things, she specifically alleged that defendants plugged the lateral lines with cement, the case, after pre-trial conference, came on for trial.

At the trial, plaintiff, her plumber, a Mr. Dailey, and a Mr. Singleton, who attempted to clean out the lateral line when it apparently had become stopped, plugged, or blocked with cement resulting in plaintiff's claimed damages, testified to facts contemplated to show, at least circumstantially, a causal relation, or connection, between the construction of defendants' warehouse and said stoppage. However, plaintiff also gave testimony showing that she undertook to remedy the situation and that the method, which she first conceived for doing this, was to install new auxiliary laterals on her own property. It would appear from her testimony that this installation was commenced in the Fall of 1956, but that, in 1957, about the time she had the kitchen facilities fixed so that she could open the sandwich shop she operated with the motel, these new lines failed to function sufficiently to solve her sewage problems, and sewage water flowed out over the street by the motel. The evidence indicates that she then conceived the idea of re-routing the old lateral line on defendants' property, and, during her cross examination, she revealed that on November 8, 1957, her attorney wrote the Zolbes a letter in which, while charging that the stoppage was caused by unspecified acts of Zolbe, also expressed her willingness to re-route the line at her own expense. On cross-examination, plaintiff also admitted that she never made any demand upon defendants to do this re-routing, or to clean out the line under their warehouse, or to pay any part of the cost of either project, or even requested them to permit her workmen to go under their warehouse for such purpose. Apparently, plaintiff received no answer to the aforementioned letter and failed to pursue the matter of re-routing further; but there is no proof that defendants ever refused her permission to repair the line, as alleged in her pleadings, or that they prevented her from re-routing it, or interfered with any easement right she attempted to exercise to alleviate the situation resulting from the clogged line. In June, 1958, her property was connected with a new public, or City, sewer line, but, because of circumstances not connected with sewage disposal, she did not get her motel business back into operation until sometime later.

At the close of plaintiff's evidence, the trial court sustained a demurrer to it on behalf of the defendants. From the tran-

script of his oral remarks from the bench, before announcing this ruling, it is obvious that the court recognized plaintiff's easement across defendants' lots for the sewer line, but he was of the opinion that she had established no entitlement to damages on account of any interference with her easement rights by defendants; and sustained their demurrer on that ground. After plaintiff had filed her motion for a new trial, defendants dismissed their cross-petition without prejudice. After the overruling of her motion for a new trial, plaintiff perfected the present appeal.

 Under a single proposition urging error in the trial court's sustaining of defendants' demurrer, plaintiff attempts to demonstrate that her evidence was sufficient to show that the lateral, for which she claimed the easement across defendants' property, was clogged, and its usefulness destroyed, by the construction of the defendants' warehouse over it. Assuming that the evidence was sufficient to render it more probable that the lateral line was clogged with cement as a result of the construction of defendants' warehouse, than that the cement's presence there was due to any other plausible cause, we think that, when plaintiff undertook to remedy the situation at her own expense, she assumed the responsibility for the results of the clogging, and relieved defendants from all liability therefor—assuming that such liability would otherwise have existed. In her attorney's aforementioned letter to defendants of November 8, 1957, plaintiff was represented as desiring only their "cooperation in this matter"; and, when asked on cross examination, if she ever made any demand upon them to re-route, or clean out, the lateral under their warehouse, she testified that her "effort" was merely to ask them to let *her* re-route said lateral. While it may be inferred from plaintiff's testimony that this letter (if received by any of the defendants) was never answered, yet, in view of the fact that plaintiff, by her own admission, never followed it up with any sort of a demand upon defendants, and

never proved that they ever interfered with any use she attempted to make of her claimed easement to accomplish her voluntary undertaking to repair, or do anything to, the lateral on their property, we cannot say that the trial court erred in concluding that her evidence was insufficient to withstand defendants' demurrer. On the contrary, we think plaintiff's evidence admits of no other reasonable conclusion than that she waived, or abandoned, any claim she might originally have prosecuted against defendants for tort, or damages, arising out of stoppage of the subject lateral, or a trespass upon her claimed easement for it. In Southwest Cotton Co. v. Valley Bank, 26 Ariz. 559, 227 P. 986, 988, the following was said on the subject of "Waiver":

"A waiver is a voluntary and intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. 40 Cyc. 252; Easterwood v. Three for One Oil Co. (Tex.Civ.App.) 246 S.W. 671; Springfield Gas & Elec. Co. v. Southern Surety Co. of Oklahoma (Mo.App.) 250 S.W. 78.

"In Springfield Gas & Electric Co. v. Southern Surety Co. of Oklahoma, supra, the court in laying down the fundamental definition of waiver stated as follows:

" 'A waiver occurs when "one in possession of any right, whether conferred by law or by contract, and with full information of the material facts, does or forbears the doing of some things inconsistent with the existence of the right or his intention to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterward. * * A consideration which is necessary to support a contract is unnecessary to support a waiver. A waiver may even take place in consequence of laches merely or in consequence of acting inconsistently with the idea of insisting upon the right which is waived, and

may be shown by conduct as well as by express words.' "

See also Roberson v. Morgan, 118 N.C. 991, 24 S.E. 667.

For the foregoing reasons, we hold that plaintiff's evidence failed to establish her claimed cause of action against the defendants' and the trial court committed no error in sustaining the latters' demurrer thereto. His ruling and judgment is therefore hereby affirmed.

HALLEY, C. J., and DAVISON, WILLIAMS and BERRY, JJ., concur.

JACKSON, IRWIN and HODGES, JJ., dissent.