EDWARD J. ALBRECHT v. SHULTZ BELTING COMPANY, Appellant.

In Banc, May 22, 1923.

1. **GUARDING MACHINERY: Liability of Employer.** It is negligence for an employer to fail to guard machinery falling within the statute, and liability for damages results when an employee within the protection of the statute is injured by reason of the employer's failure to guard it when it is practicable so to do.

2. ————: ————: **Ordinary Duties.** The words "ordinary duties" used in the statute (Sec. 6786, R. S. 1919) requiring factory machinery to be guarded "when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties" do not apply solely to work with which the employee is continuously occupied, but embrace customary and usual acts performed near the unguarded dangerous appliance under the direction of the employer. Where plaintiff was employed in a belting factory; a change from street to working clothes was necessary; his street clothing was hung upon a shelf prepared for the purpose, and he was directed by the company to hang it there;

employees were allowed fifteen minutes at the close of their day's work to wash and change their clothes, and were paid for their time in so doing, plaintiff was in the exercise of his ordinary duties, within the meaning of the statute, when, at the close of his day's work, he went to the closet to change his clothing, and lifting a burlap curtain, attached to its shelf, it caught upon an unguarded shaft rapidly revolving in front of the shelf, and carried his arm with it. [Distinguishing O'Brien v. Western Steel Co., 100 Mo. 182.]

3. ———: ———: **Anticipating Danger: Obvious Danger.** A failure to guard shafting in reach of the clothing and person of an employee is negligent when in the circumstances some injury to some one reasonably may be foreseen as a reasonable consequence; and when the evidence shows that the unguarded shaft was dangerous to plaintiff in the very circumstances in which it was situated, it will not be held that no danger from it was within reasonable anticipation. And direct testimony elicited by defendant in an attempt to show that plaintiff was guilty of contributory negligence in choosing a dangerous method as against a safe one in disposing of the burlap curtain, which wrapped around the shaft and carried his arm with it, as he lifted the curtain to get his clothing from the shelf to which it was attached, is evidence tending to prove that injury might have been apprehended.

4. ———: **Contributory Negligence: Knowledge of Danger.** To hold the employee guilty of contributory negligence as a matter of law it is not sufficient to show that he knew it was dangerous to lift the curtain past the fast revolving shaft in putting it on top of the shelf to which it was attached; if he had safely raised it for three weeks, and the shafting was not glaringly dangerous, he is not to be charged with contributory negligence as a matter of law merely because he was not thoughtful and closely attentive to the dangerous situation.

5. ———: ———: **Choosing Dangerous Method.** To hold the employee guilty of contributory negligence as a matter of law, in that he chose a dangerous way of disposing of the curtain attached to the shelf of a clothes closet when a safe one was available, it must conclusively appear, not only that he chose a dangerous method, but that a safe one was open to him, and that he made his choice knowingly and with an appreciation of the danger, latent or otherwise. Such question is usually one for the jury, and to make it one of law the evidence must be conclusive.

6. ———: **Negligence Under Statute or Common Law.** Instructions which undeniably proceed under the statute cannot be held to have submitted the case under both the common law and the statute. If

they include none of the special circumstances which at common law are sometimes held to show that unguarded machinery may be found to enter into and form a part of a cause of action based upon a failure to use ordinary care to furnish the employee a safe place in which to work, it cannot be held that they submitted the case under both the common law and the statute.

7. ———: Instructions: In Line of Duty. An instruction authorizing a verdict for plaintiff in his suit for damages against his employer for failure to safely guard dangerous machinery, which does not submit the question whether at the time of his injury he was in the line of duty, engaged in his ordinary duties, is error.

8. ———: ———: Required. An instruction which submits the question whether plaintiff was "required" to lift the burlap curtain and place it upon the shelf of the clothes closet, where there is no evidence of any such order or requirement, and one of .the issues is whether he negligently lifted the curtain when he might have pursued another method which was safe, is subject to criticism.

Appeal from St. Louis City Circuit Court.—*Hon. M. Hartmann*, Judge.

REVERSED AND REMANDED.

*Holland, Rutledge & Lashly* for appellant.

(1)   The court erred in refusing to give the peremptory instruction offered by appellant at the close of all the evidence. (a) Because the plaintiff was not entitled to recover under the statute. Boesel v. Wells-Fargo Exp. Co., 260 Mo. 480; Meifert v. Union Sand Co., 124 Mo. App. 491; American Brewing Assn. v. Talbot, 141 Mo. 674; O'Brien v. Western Steel Co., 100 Mo. 183; Nugent v. Milling Co., 131 Mo. 243; Graney v. Railroad, 157 Mo. 666; Moore v. Railroad, 146 Mo. 572; Hurst v. Railroad, 163 Mo. 322; Smith v. Forrester-Nace Box Co., 193 Mo. 715. (b) Because plaintiff was not entitled to recover at common law. Authorities above; also Lore v. Mfg. Co., 160 Mo. 608; Lolinger v. Cordage Co., 124 Mo. 685; Blair v. Heibel, 103 Mo. App. 621. (2) The court erred in giving instruction number 2 at the instance of respondent. (a) Because under the testimony there was no evidence

that would warrant a recovery either under the statute or common law, and the case should not have been submitted to the jury under any instruction whatsoever. Authorities supra. (b) Because there was no testimony upon which to predicate divers portions of said instructions. (3) The court erred in refusing to give Instruction C offered by appellant. Said instruction properly states the law in connection with contributory negligence. Where an employee may perform his duties in two ways, one of which is obviously dangerous and the other is free from danger, and he voluntarily selects the former, he is precluded from recovery. Moore v. Ry. Co., 146 Mo. 572; 1 Bailey on Personal Injuries, sec. 1121; Hurst v. Railroad, 163 Mo. 322; Smith v. Forrester-Nace Box Co., 193 Mo. 715; Nugent v. Milling Co., 131 Mo. 241, 243; Graney v. Railroad, 157 Mo. 666.

*Jesse T. Friday* for respondent; *James T. Roberts* of counsel.

(1) The statute, being highly remedial and in derogation of the common law, shall be literally construed so as to effectuate the true intent and meaning thereof. Sec. 7048, R. S. 1919; Austin v. Bluff City Shoe Co., 176 Mo. App. 547, 565; Cole v. North Am. Lead Co., 240 Mo. 247. (2) Plaintiff was not guilty of contributory negligence as a matter of law in placing the burlap curtain on top of the shelf, when taking his clothing from the closet, instead of pushing it aside. As here presented it was a question for the jury, and that issue having been determined by the jury is eliminated on appeal. Yates v. House Wrecking Co., 95 S. W. 549; Willadsen v. Creamery Co., 214 S. W. 58; Turner v. Land Co., 188 Mo. App. 494; Powell v. Land Co., 221 S. W. 765; Brasel v. Box Co., 220 S. W. 987; Wagner v. Gilsonite Co., 220 S. W. 890; Mininea v. Cooperage Co., 175 Mo. App. 103; Ossenberg v. Chemical Co., 218 S. W. 421; Wolf v. Scul-

lin Steel Co., 217 S. W. 573; Ewing v. Tel. Co., 173 Mo. App. 508; Stafford v. Tel. Co., 113 Mo. App. 725. (3) Whether there is a casual connection between the failure to guard and the injury is usually a question for the jury. Austin v. Shoe Co., 176 Mo. App. 572; Lohmeyer v. Cordage Co., 137 Mo. App. 624; Henderson v. Kansas City, 117 Mo. 493; Shaw v. Kansas City, 196 S. W. 1091. (4) Appellant's contention that defendant could not have anticipated the injury, and it was the result of mere accident or misadventure, is not well taken. The object and purpose of the guarding statute was to put a stop to all such injuries which grew out of inattention, inadvertence, mishap, accident or misadventure. Cole v. North Am. Lead Co., 240 Mo. 407. (5) While the violation of the statute makes a case of negligence *per se,* and while the master may not have anticipated the very accident that did occur, yet the liability of a person charged with negligence does not depend upon the question whether or not he could or ought to have anticipated the very injury complained of, but he will be held liable for anything which, after the injury is complete, appears to have been the natural and probable consequence of his act or omission. Buckner v. Horse and Mule Co., 221 Mo. 719; Daneschosky v. Seibel, 193 S. W. 969; Fishburn v. Railroad, 127 Iowa, 492. (6) Appellant contends that this shafting was so placed that it was not dangerous and need not be guarded. This was a question for the jury. Austin v. Shoe Co., 176 Mo. App. 573. (7) The petition alleges plaintiff was required to hang his clothes under the shelf in question and that allegation was supported by the undisputed testimony of plaintiff that the foreman directed him to hang his clothes in that particular place, and he was allowed fifteen minutes at closing time to perform this work, and he was paid for that time. In the circumstances here presented it was clearly within the scope of his duties. Millsap v. Beggs, 122 Mo. App. 9; Yates v. House Wrecking Co., 195 S. W. 549; Shepard v. Railroad, 3 Mo. App. 550; Mullery v. Tel. Co., 180 Mo. App. 128.

JAMES T. BLAIR, J.—This is an appeal from a judgment for damages for injuries which respondent suffered in appellant's factory. Appellant was engaged in the manufacture of leather belting, and respondent had been in its employ for about two years before he was hurt. The factory was in a three story building. Respondent first worked on the first floor at hand work. After a few months of this he was put at work on the third floor on a setting machine which was used to "iron out" or smooth hides. About two months before he was injured respondent's machine was moved to the second floor, and he worked there until he was injured. The work was of a character which required a change from street to working clothes. When respondent first went to work the foreman directed him to hang his street clothing under a shelf which had been fixed to the south wall of the third floor. Employees were given from five to fifteen minutes before quitting time to wash and change to their street clothing. The machinery was kept moving until the regular quitting time. Respondent was in the class which was allowed fifteen minutes. This had been the rule and practice all the time he had worked for appellant. There was evidence tending to show that the shelf under which respondent had been directed to hang his clothing and under which he had regularly hung it for about two years, was six and one-half feet high; that a board was fastened to the wall, and into this nails were partly driven, and upon these nails the clothing was hung; this board extended from the wall about nine or ten inches. To this shelf light burlap, rather flimsy in character, was fastened and hung down about five feet. The shelf was about five feet wide. This was designed to protect clothing hanging under the shelf. Other similar shelves were used by other employees. The one in question was used by respondent and one other man.

About two months before respondent was injured, appellant undertook to place a shaft in the room on the third floor. Respondent's machine had been moved to the

second floor and he then worked there. He and his fellow-employee continued to use the shelf for their street clothing as theretofore. The shaft was installed near the south side of the third-floor room. It was intended to be so placed that it center was twenty inches from the south wall. It was two and seven-sixteenths inches in diameter, and the wall at the shelf bulged about one inch. The surface of the shaft next the wall at the point where the shelf was placed was about seventeen and three-fourths inches from the wall. There is evidence which tends to show that the shaft was about six inches higher than the shelf. A computation will show that if these distances are taken, the shaft was a fraction over ten inches from the upper and outer edge of the shelf. There is other evidence which tends to show that this distance was nearly four inches greater. Other evidence points to distances between these two extremes. The shaft, when in operation, made 260 to 270 revolutions a minute. During the whole time, two years, of respondent's employment by appellant, he and other employees who used the shelf in question had, when they came to get their street clothing, habitually lifted the burlap which hung down from the shelf and placed it on top of the shelf in order that they might gain access to their clothing. The burlap was extended around the ends of the shelf two or more inches and nailed there. On the day he was injured, respondent left his machine at the usual time and proceeded to the shelf to get his street clothes. On this occasion he happened to. be the first to reach the shelf. The machinery was still running and the shaft was revolving at the usual rate. It was unguarded, though the evidence shows that easily and at small expense, guards could have been provided which would in no way have interfered with the operation or uses of the shaft. Respondent, as was the custom, lifted the burlap for the purpose of placing it on the shelf. It caught on the shaft and wrapped around it. Respondent's right arm was carried with it and he was lifted from the floor. He lost his arm as a result of the injury.

The case was submitted to the jury on the issues whether appellant was negligent in (1) failing to guard the shafting, or (2) had failed to exercise ordinary care to furnish respondent a reasonably safe place to work, and (3) whether respondent was guilty of contributory negligence.

I.   The shafting was unguarded, and it was practicable to guard it.   It is not denied that it is negligence for an employer to fail to guard shafting when it falls within the statute (Simpson v. Iron Works Co., 249 Mo. l. c. 386), nor that liability results from such failure when an employee within the protection of the statute is injured by reason of a failure to guard when it is practicable to do so.

*Guarding Machinery.*

1. It is insisted that the statute is not applicable for the reason (so it is urged) that respondent was not engaged in his "ordinary duties" when injured.   The section of the statute which provided for the guarding of shafting at the time respondent was injured, reads as follows:

*Ordinary Duties.*

"The belting, shafting, machines, machinery, gearing and drums, in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments."   [Sec. 7828, R. S. 1909.]

It is evident that the duty to guard does not arise under this language unless the shafting, etc., is "so placed as to be dangerous to persons employed therein" (establishments described) "or thereabout while engaged in their ordinary duties."   There is no evidence that there were any employees to whom the shafting in question could have been dangerous except those who, like respondent, were directed and accustomed to hang their clothing under the shelf where the injury occurred

or, perhaps, similar shelves. The word "ordinary" is defined to mean: "According to established order; methodical; settled; regular; common; customary; usual." It is clear that respondent's acts performed near the shelf and shafting were customary, common and usual. It is not to be held, though a duty be performed daily and regularly, that it is not an ordinary duty simply because it does not continuously occupy the employee. Such a construction would so constrict the scope of the statute as to do violence to the plain meaning of its language. The question thus becomes one whether respondent was in the line of duty when using the shelf as directed by the foreman. The evidence tends to show the change of clothing was necessary, and that this was recognized by appellant, and that appellant directed respondent to use the shelf it furnished as a place to hang his clothing and paid him for the time during which the change of clothing was made. The case upon which appellant relies is that of O'Brien v. Western Steel Co., 100 Mo. 182. In that case deceased and other employees had, for their own convenience, on their own initiative and at their own expense, arranged for a supply of ice water on the upper floor. It was while returning from this upper floor, where he had gone to get ice water, that O'Brien was killed. The elevator was operated from the engine room. The employer merely suffered its use by employees for the purpose mentioned. The petition charged the elevator was improperly constructed in that the operator could not see the platform from his position and that O'Brien's death was due to this. It was held deceased was at most using the elevator "under an implied license" and took it as he found it, manner of operation and all. It is apparent this decision has little, if anything, to do with the question in the instant case. The facts are widely dissimilar.

The question whether respondent was in the line of duty and engaged in his ordinary duties was submitted to the jury, and under the rules in this State the evidence justified such submission. [Jackson v. Butler, 249 Mo.

l. c. 362, 363, and cases cited; Mullery v. Telephone Co., 180 Mo. App. l. c. 130; Day v. Dry Goods Co., 114 Mo. App. l. c. 485; Shepard v. Railway, 3 Mo. App. l. c. 553, 554.] The rule in other states is the same. [Brick Co. v. Fisher, 79 Kan. l. c. 580, 581.]

2. The second contention is that no danger from the shaft was within reasonable anticipation and, therefore, that it was not incumbent upon appellant to guard it. Let it be conceded that the principle ap-

Anticipating Injury. plies in determining whether a guard is required by this statute. In Scherer v. Bryant, 273 Mo. l. c. 602, the principle is stated thus: "It is true, except in cases of wanton wrong, there is no negligence if no reasonable man could have foreseen any injury from the act done. But it is not true that the particular injury must have been such it could have been foreseen. An act is negligent when in the circumstances some injury to some one reasonably may be foreseen as a reasonable consequence. This being shown, liability attaches 'for anything which, after the injury is complete, appears to have been a natural and probable consequence.' [Benton v. St. Louis, 248 Mo. l. c. 110, and cases cited.]" Some courts have held that shafting "in the reach of the clothing and person is notoriously dangerous." [Balzer v. Waring, 176 Ind. l. c. 597; Paducah B. & B. Co. v. Parker, 143 Ky. l. c. 609, 610, and cases cited.] The Legislature in passing the section of the statute in question, in a sense, declares it to be dangerous in such circumstances. In this case these considerations need not be taken into account. The evidence shows the unguarded shafting was dangerous to respondent in the very circumstances in which he was situated. Direct testimony to this effect was elicited in an effort to show that respondent was guilty of contributory negligence in that he chose a dangerous method as against a safe one in disposing of the burlap in getting his cloth-

Obvious Danger. ing. This raises a separate question, but does not prevent the testimony from being sufficient to tend to prove that injury reasonably might have been

apprehended. There was also evidence that the burlap might be caught by the shaft if it was thrown upon the shelf. Appellant was not entitled to assume that respondent would at all times have the shafting in mind and protect himself from injury by it. To adopt such a rule would emasculate the statute. This court in Simpson v. Iron Works Co., 249 Mo. l. c. 390, quoted with approval the following: "The Legislature knew that the human mind and conduct were such that a servant when in the performance of his duties to his master, surrounded by dangerous machinery, in motion, with his mind concentrated upon his work, oblivious to his surroundings, is liable to slip or take a misstep and fall into the revolving machinery, or thoughtlessly thrust his hand or other portion of his body into the gearing or other portion of the machinery; and if not 'safely and securely guarded,' he would in consequence thereof receive injuries of a serious character." This principle is to be kept in mind in determining whether injury from the shaft in question reasonably was to be anticipated. The point must be ruled against the contention made. [Yates v. House Wrecking Co., 195 S. W. l. c. 551.] The cases cited are not in point on the facts of this record.

3. It is argued that respondent is shown to be guilty of contributory negligence as a matter of law because, it is urged, he (a) knew the shafting was dangerous if he lifted the burlap past it in putting it on the shelf, and (b) because he chose a dangerous way of disposing of the burlap when a safe way was available. With respect to the first of these it may be said that respondent had raised the burlap in the same way for two years and put it upon the shelf, and that this is some evidence that the manner in which he raised it was known to appellant. Three weeks before the injury appellant installed the shaft. Respondent continued as before, and safely, for thirty-six times, the burlap was raised and laid upon the shelf. The shafting was not glaringly dangerous (Willadsen v. Creamery Co., 201 Mo. App. l. c. 537, 538, and cases cited), and the question of contributory negli-

*Contributory Negligence.*

*Knowledge of Danger.*

gence is for the jury unless the evidence conclusively shows it. It is not conclusively shown when from the facts proved reasonable men may draw different conclusions. In a case under the guarding statute (Tatum v. Laundry Co., 208 S. W. l. c. 142), it is said: "We cannot say as a matter of law that plaintiff was guilty of contributory negligence even if convinced from all the evidence that plaintiff was absorbed in his work and to a degree inattentive and unmindful of the constant danger of the unguarded shaft. While our statute requiring the guarding of certain machinery does not abolish contributory negligence, it recognizes the fact that reasonably careful workmen do become absorbed in their work and become unmindful of the ever present dangers from revolving shafts and belts and whirring machinery, and this statute seeks to obviate just such dangers. Unless the courts proceed on this theory, the statute counts for nothing. [Simpson v. Iron Works Co., 249 Mo. 376, 389; Brashears v. Iron Works, 171 Mo. App. 507, 517; Hughes v. Const. & Mfg. Co., 188 Mo. App. 549, 556.]" Other decisions are substantially to the same effect. [Balzer v. Waring, 176 Ind. l. c. 595, 596; Cook v. Lumber Co., 61 Wash. l. c. 122, 123; Caspar v. Lewin, 82 Kan. l. c. 627, et seq.; Klotz v. Power & Mining Co., 136 Wis. l. c. 110; Paducah Box & Basket Co. v. Parker, 143 Ky. l. c. 609, 610; Rase v. Railway, 107 Minn. l. c. 281.]

With respect to the contention that respondent knowingly chose a dangerous method when a safe one was available, the same principles announced in the Tatum Case must be kept in mind. It needs no citation of authorities to show that to sustain appellant's **Choosing Dangerous Method.** position on this question it must conclusively appear from the evidence, not only that respondent chose a dangerous method, but that a safe one was open to him and that he made his choice knowingly and with an appreciation of the danger, latent or otherwise. This question is usually one for the jury, and we are unable to say that the evidence is so conclusive as to make it one of law in this case.

·    II.   It is urged that the court submitted the case on
the common law as well as on the statute and that this
was error.    There are several decisions in this State
which state that at common law the master was not bound
to fence his dangerous machinery.    [Lore v. American
Mfg. Co., 160 Mo. l. c. 622; Lohmeyer v. Cord-
Instructions.      age Co., 214 Mo. l. c. 687.]   In Bair v. Heibel,
103 Mo. App. l. c. 632, GOODE, J., says: "It seems there is
no rule of the common law requiring dangerous machin-
ery to be fenced or guarded, and that the master is not
answerable if a servant of full capacity is injured in
consequence of working about unguarded machines."
That case recognizes liability for negligently exposing
a young and inexperienced workman to hazards he does
not understand, and does not deny liability for negli-
gently ordering a workman into proximity to dangerous
machinery with the hazards of which he is unfamiliar
nor deny liability for exposing a workman to latent and
hidden dangers.    [Dowling v. Allen & Co., 74 Mo. 13;
Ford v. Pulp Co., 172 Mass. 544.]   In a note to this last
case, in 48 L. R. A. 96, a discussion of the cases may be
found.   The rule is stated and decisions are collected in
Section 976, pages 2641, 2642, and notes, Vol. 3, Labatt's
Master & Servant.   This rule, as laid down in the Mis-
souri cases cited, supra, is conceded by respondent.
Neither the petition nor the instruction complained of in-
cludes any of the special circumstances which, at common
law, are sometimes held to show that unguarded machin-
ery may be found to enter into and form a part of a
cause of action based upon a failure to use ordinary
care to furnish an employee a reasonably safe place to
work.   The question whether the instruction submits all
contested issues of fact under the statute is another mat-
ter.   It does not refer to the statute in terms, but this
was not necessary.   [Lore v. Mfg. Co., 160 Mo. l. c. 621.]
There is no question on the record that the shafting was
unguarded and none that it was practicable to guard it.
It was unnecessary to submit these to the jury.   The in-
struction requires the jury, before finding for respond-
ent, to find the circumstances of the situation at the time

of injury substantially as required in the instruction. which undeniably proceeds under the statute. It likewise requires a finding of facts which, if found, would show that the shaft was dangerous to respondent in the situation he was in when injured, and likewise requires a finding that appellant could reasonably have anticipated his injury. At least, in one respect, however, this instruction is incorrect. It does not submit the question whether respondent was in line of duty, engaged in his ordinary duties, at the time he was injured. In another feature it is subject to criticism. It submits the question whether respondent was "required" to lift the burlap and place it on the shelf. There is no evidence of any order or requirement of this kind, and one issue was whether he negligently lifted it when he might have pursued another method which was safe. In the circumstances instruction two must be held erroneous. Other questions raised concerning instructions are substantially covered by what has been said.

The judgment is reversed and the cause remanded. All concur.