ERNEST GUIDICE v. VIVIANO & BROTHERS MACARONI MANUFACTURING COMPANY, Appellant.—8 S. W. (2d) 964.

Division One, July 30, 1928.

1006

*Wilbur C. Schwartz* and *Watts & Gentry* for appellant.

*Mark D. Eagleton* and *Hensley, Allen & Marsalek* for respondent.

GANTT, J.—Plaintiff seeks, under Section 6786, Revised Statutes 1919, requiring machines, machinery, etc., to be guarded, to recover for personal injuries to his right hand while in the service of defendant in its macaroni factory in St. Louis.

The answer was a general denial and that plaintiff was guilty of contributory negligence. The reply was a general denial. Judgment was for $15,000, and defendant appealed.

I. Appellant assigns error on the refusal of its instruction in the nature of a demurrer. The evidence for respondent tended to show that at the time of the injury respondent had been in the service of appellant as an experienced tool and die maker and maintenance man for about two years; that he was ordered by appellant to make and install, as directed, three fans on the north side of the fourth floor of the factory, together with an electric motor to operate the fans; that he and a helper were so engaged for about four weeks; that appellant had caused its engineer to place a row of perpendicular steam pipes, three quarters of an inch in diameter and about seven inches apart, across the north end of the room and six feet from the north wall; that the pipes served to partition a space six feet wide by twenty feet long off of the north end of the room, leaving at the west end of the pipes an opening and a door to enter from the large room into this space so partitioned; that respondent installed the fans, with three blades and six feet in diameter, in a row seven inches apart from east to west, just north of the steam pipes and south of the motor, the motor being between the fans and the north wall and near the east side of the small room; that a switch was located outside of the enclosure to control the power; that the purpose of the steam pipes was to produce heat, and the purpose of the fans was to force the heat into the room south of the steam pipes to dry macaroni on tables in the large room; that on Saturday morning, October 20, 1923, the fans were wired and the electric switch installed, and that this completed the installation of the fans; that there was no steam in the pipes, but respondent caused the power to be turned on and was giving the fans a "try-out" before undertaking to dry macaroni on the following Monday; that while the motor was running he heard a knock and thought it came from a bearing in the motor; that he went into the enclosure in which the motor and fans were located and to the motor, which was immediately north of the east fan; and stood between the north side of the motor and the north wall of the building; that he then extended his hand toward the motor to place it thereon and above the enclosed bearing to determine if the bearing was running hot; that this brought his hand within three or three and a half inches of the north end of the revolving blades of the fan;

and that as he so extended his hand, his foot slipped causing his hand to come in contact with the fan, revolving 400 revolutions a minute.

The evidence for respondent further tended to show that after the injury a wire screen with mesh about an inch square was placed against the south side of the row of pipes to protect employees working in the large room from injury by the fans; but that no guard had at the time of the trial been placed on the north side of the fans in the small room to protect employees working therein.

The evidence for respondent further tended to show that a guard could have been placed on the north side of the fans without interfering with the practical operation of the same; and if it had been so placed, respondent would not have been injured; that about two weeks before the injury respondent told Mr. Tom Viviano, who was an officer of the defendant in charge of its plant, the fans ought to be guarded, and Mr. Viviano replied that he would see about it when his brother, Sam, returned from Europe.

The pertinent part of the statute involved is as follows:

"The belting, shafting, machines, machinery, gearing and drums in all manufacturing, mechanical and other establishments in this State when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible."

Appellant claims the instruction in the nature of a demurrer should have been given, and argues as follows:

(a) That respondent was not within the protection of the statute during the time the machinery was being installed. On the facts this contention must be put aside, for the evidence tended to show the installation of the fans had been completed. Indeed, appellant does not claim otherwise.

(b) That respondent was not within the protection of the statute during the time the machinery was being tested, after its installation and before its operation in connection with the production of the output of the factory.

The statute does not provide for any days of grace pending the time of the installation and operation of the machinery for any purpose. [Wagner v. Construction Co., 220 S. W. 890, 1. c. 898.]

(c) That respondent was not within the protection of the statute, for the reason that he was the only employee whose duty required him to go into the enclosure where the motor was located.

The statute is for the protection of every employee whose ordinary duties require him to be about the machinery. We have so ruled in the case of Head v. Leming Lumber Co., 281 S. W. 441.

1010

(d) That respondent at the time of his injury was in the performance of an *extraordinary* duty within the meaning of the statute, and for that reason not within its protection.

It is not claimed that respondent was not in the performance of *his* ordinary duty when injured, but it is argued that the protection of the statute is afforded to those employees only who are engaged in duties ordinarily performed by employees at work with and about machinery when it is operated for the production of the product.

This contention is in the face of the plain wording of the statute, which, without exception, affords protection to all employees when working with or about machinery in the discharge of their ordinary duties. Respondent was required, among other duties to repair and install machinery. These duties required him to be about not only one machine but all of the machines. It would be absurd to deny respondent the protection afforded him by the plain words of the statute.

In Simon v. Brass Co., 298 Mo. 70, l. c. 78, 250 S. W. 74, we said: "The statute was intended to cover all appliances, machines and machinery in manufacturing plants, and to extend its protection to all persons employed in such establishments, whether working at and with the machines, or about them. [Austin v. Shoe Co., 176 Mo. App. 546, 561.] A machine is dangerous in such sense that the employer is required to guard it, 'if, in the ordinary course of human affairs, danger may be reasonably anticipated from the use of it without protection.' [Hindle v. Birtwistle, 1 Q. B. (1897) 192.]"

To the same effect: Albrecht v. Belting Co., 299 Mo. 12, 252 S. W. 400; Tatum v. Laundry Co., 201 Mo. App. 97, 208 S. W. 139; Willadsen v. Creamery Co., 201 Mo. App. 527, 214 S. W. 258; Lumatz v. Car Co., 217 Mo. App. 94, 273 S. W. 1089; Grott v. Shoe Co., 2 S. W. (2d) 785; Stoll v. Electric Co., 240 S. W. 245, 299 Mo. 45.

The record discloses a case for submission to the jury, and the contentions are overruled.

II. Appellant assigns error on the amount of the verdict. At the time of the injury respondent was thirty-seven years of age and earning forty dollars per week. As a result of the injury he lost six months' time, of the value of one thousand dollars. His middle, ring and little fingers were made permanently stiff and wholly useless. The thumb and index finger are normal, and he uses this hand by pinching with his thumb and finger. There are deep scars on the palm and back of the hand. Nerve ends are involved in the scar tissue, causing pain. A small piece of

bone was removed from the hand, leaving a depression. The hand has atrophied from non-use and inflammation. He suffered much pain for sometime after the injury and will continue to suffer. About six months after the injury he returned to his former position with defendant at about the same wages and successfully performed, to the time of trial, his former duties except that he was dependent upon his helper for assistance in heavy lifting. While it is true his hand is badly cripled and he still suffers pain and cannot perform his work as easily as before, yet it is evident he is far from being incapacitated as a machinist. No doubt, if he lost his position with appellant, he would experience some difficulty in procuring another, but his record with appellant as a machinist after the injury would aid him in securing another position.

The facts considered, we are convinced the verdict was excessive. [Simon v. Brass Manufacturing Co., 298 Mo. 70, l. c. 80; Hulse v. St. Joseph Ry. Co., 214 S. W. l. c. 155.]

If respondent will within ten days enter a *remittitur* in the sum of $5000, the judgment will be affirmed for $10,000 as of the date of the judgment of the circuit court; otherwise the judgment will be reversed and the cause remanded. All concur, except *Gentry, J.,* not sitting.