WILMA L. STEIN, Appellant, v. BATTENFIELD OIL & GREASE COMPANY.—39 S. W.. (2d) 345.

Division One, May 21, 1931.*

*NOTE: Opinion filed at October Term, 1930, March 31, 1931; motion for rehearing overruled at April Term, May 21, 1931.

*J. C. James* and *Cowgill & Popham* for appellant.

806

*McCune, Caldwell & Downing* for respondent.

ELLISON, C.—Action for $10,000 damages for the death of plaintiff's husband, occasioned by the alleged negligence of the defendant. From a judgment overruling plaintiff's motion to set aside her involuntary nonsuit, taken with leave, she has appealed. The deceased was engaged in repairing and replacing certain electric apparatus in the respondent's manufacturing plant when he became entangled in a belt running from an electric motor, with resultant fatal injury.

The petition charged the belt was unguarded, in violation of Section 13222, Revised Statutes 1929, and there is substantial evidence of the fact. Appellant contends the pleading also assigned common-law negligence as a ground of recovery. The answer was a general denial, coupled with pleas of contributory negligence and assumed

risk. As regards the statute, respondent asserts the evidence conclusively showed the deceased did not come within its terms and protection, because he was an independent contractor and not a person "employed" at the plant and "engaged in (his) ordinary duties." With respect to the common-law negligence the contention is that the deceased was an invitee and assumed the risk of known dangers or was guilty of contributory negligence as a matter of law.

The deceased was thirty-eight years old and an expert electrician of twenty years' experience. He was in business for himself. He originally installed the motor which figures in this case. His work included the wiring of houses, buildings, hotels, and electrical work generally. He usually had a number of jobs on hand, and on the day of his injury had other work besides that of respondent. He furnished his own tools and materials and worked at his own pleasure and at his own hours. He had regular printed statement forms, which bore the heading: "In account with Oscar F. Stein, Electrical Construction and Repairs (telephone and street numbers). All bills due and payable when the work is completed." He used these in rendering statements to respondent and other customers for work done and materials furnished. For his time he charged $1.25 per hour, and his monthly earnings were from $250 to $300.

He was paid by check on each bill rendered respondent. This form of payment was not used by respondent in paying the wages of the workers in the plant generally. The deceased had been doing jobs of electrical work for respondent off and on for four or five years. Indeed, it seems he was called to do all the work respondent had in his line. Sometimes he came for an hour, sometimes for a day and a half, and there would be intervals of four or five months between jobs. He did not work at any certain time, but came and went as he pleased. The regular employees started work at seven o'clock A. M. and worked until five-thirty P. M. There was no evidence whatever that respondent retained or attempted to exercise any power of control over his work; and witness Law, testifying for appellant, said that he had never heard any officers of respondent give Stein any instructions of any nature about how to do the work.

On February 14, 1924, Stein came to the respondent's plant and commenced to run a conduit pipe along the east wall of a large room on the first floor to a switch box in the southeast corner of the room. The room was about 100 feet by seventy-five feet, and a number of men were working therein. The switch box was fastened against the east wall about eight feet above the floor and served the electric motor already mentioned, which stood opposite the switch box about three and a half feet from the east wall. The motor was about three and one-half feet high, and the belt ran from a pulley thereon upward and northward to shafting near the ceiling.

There was evidence that the motor and belt were guarded, but, as stated, also evidence tending to the contrary.

Immediately before the accident Stein was (so Mr. Law testified) reaming a hole in the switchbox for the conduit to enter. He was standing with his right foot on a two-by-six cross piece which was against the east wall and three and one-half feet above the floor. His left foot was on the flange at the top of the motor some three and one-half feet away from the wall and about the same distance above the floor. This flange was rounded and three or four inches in width. He was partly astraddle the belt and the motor was running and vibrating. His face was toward the north and the switchbox was slightly south of him so that he worked back over his right shoulder.

No witness was produced who saw deceased start to fall; but Law, who had just passed him and was then about sixteen feet away, heard the belt snap off the pulley, turned, and saw the deceased falling down on the belt and boxing. With his chest on the motor the deceased was pinned under the guard with the end thereof resting on his head, and Law (so he said) and other employees tore the guard down to get him loose. His injuries were a badly lacerated arm and a fractured skull. He died a few minutes after being taken to a hospital.

I. Appellant's first contention is that she made out a prima-facie case of negligence *per se* under Section 13222, Revised Statutes 1929; respondent maintains the contrary, asserting the deceased did not  come within the protection of the statute, because he was an independent contractor. This raises two questions: the first as to the proper construction of the statute; and the second as to the nature of the relation shown by the evidence to have been sustained by the deceased to the respondent. The part of the section involved is as follows:

"The belting, shafting, machines, machinery, gearing and drums in all manufacturing, mechanical and other establishments in this state, when so placed as to be dangerous to *persons employed therein or thereabout while engaged in their ordinary duties,* shall be safely and securely guarded when possible." (Italics ours.)

(a) It is well settled that the statute is highly remedial and should be liberally construed to effectuate its true intent and meaning. But even the cases cited by appellant proceed on the theory that when a person injured in an establishment covered by the statute seeks to found his cause of action upon a violation thereof, he must show he came within its provisions and was a person "employed therein or thereabout" and "engaged in (his) ordinary duties."

Thus, in Poppen v. Wagner Elec. Corp. (St. L. Ct. App.), 2 S. W. (2d) 199, the plaintiff was in the employ of the defendant as operator of a power punch press. The press was not working properly and he called his foreman. The latter summoned an expert. The foreman directed the plaintiff to stand to one side and observe how the expert fed the machine. While so doing the plaintiff slipped and thrust out his hand, and three of his fingers were cut off by the unguarded punch of the press. The Court of Appeals held it was not at liberty, under the authorities, to adopt a strict and narrow interpretation of the words "ordinary duties" as used in the statute, but that even if so interpreted, the plaintiff came within its purview, under the facts.

In Cole v. North American Lead Co., 240 Mo. 397, 405, 144 S. W. 855, 856, quoting from Huss v. Heydt Bakery Co., 210 Mo. 44, 66, 108 S. W. 63, 70, speaking of this section, this court said: "It is perfectly clear that it was the intention of the Legislature to change the common law governing master and servant, which only required him to furnish the servant a reasonably safe place and instrumentalities with which to perform his duties, and to establish instead thereof a much higher standard of duty upon the master."

In Guidice v. Viviano & Bros. Macaroni Mfg. Co., 320 Mo. 1005, 1010, 8 S. W. (2d) 964, 965-6, the plaintiff was a mechanic and maintenance man in the defendant's macaroni factory. He had just completed the installation of a system of steam pipes and large motor-driven fans in a part of the drying room which was partitioned off from the rest of it, and was testing the apparatus when injured. The fans were not guarded, but the duties of all the other employees did not require them to enter the enclosure. The defendant contended the plaintiff did not come within the protection of the statute because he was at the time in the performance of an *extraordinary* duty, the defendant's theory being that the statute covers only employees engaged in duties ordinarily performed by employees working with or about machinery operating in plant production. This court overruled that contention, saying the work the plaintiff mechanic was doing might have been extraordinary as regards the other employees, but it was ordinary as to *him*. Speaking to this point the opinion declares the statute "affords protection to all employees when working with or about machinery in the discharge of their ordinary duties."

In Simon v. St. Louis Brass Mfg. Co., 298 Mo. 70, 78, 250 S. W. 74, 76, the statement made is that "the statute was intended to cover all appliances, machines and machinery in manufacturing plants, and to extend its protection to all persons employed in such establishments, whether working at and with the machines, or about them."

In Albrecht v. Schultz Belting Co., 299 Mo. 12, 19, 252 S. W. 400, 402, the plaintiff, a machine operator in the defendant's factory,

was changing from his work clothes to his street clothes at the end of the day. By direction of the company for some two years he had customarily kept the latter hanging from the under side of a shelf where they were protected by a burlap curtain. An unguarded and rapidly revolving shaft was located about ten inches obliquely above the shelf. When the plaintiff threw open the curtain to get his clothes it became entangled with and wrapped around the shaft, carrying his arm with it. As a result he lost the arm. The defendant argued the guarding statute was not applicable, because the plaintiff was not at the time engaged in his "ordinary duties." This court, after quoting the statute as we have done, said: "It is evident that the duty to guard does not arise under this language unless the shafting, etc., is 'so placed as to be dangerous to persons employed therein' (establishments described) 'or thereabout while engaged in their ordinary duties.'" Then after discussing the meaning of the word "ordinary" the opinion continued: "The question thus becomes one whether respondent was in the line of duty when using the shelf as directed by the foreman." It was held the question was one of fact for the jury, and that issue having been omitted from plaintiff's instruction submitting the case under the statute, the cause was reversed and remanded.

The foregoing decisions are cited by *appellant*. There are others along the same line, as, Head v. M. E. Leming Lbr. Co. (Mo. Div. 1), 281 S. W. 441, 444. There the clothing of the deceased, an oiler and cleaner, caught on a set screw projecting from a revolving line shaft, whereby he sustained fatal injuries. The court said it was clear the set screw could have been guarded, and added: "The only question that is even debatable is whether Head (the deceased) was engaged in the performance of a duty incident to his employment at the time he came in contact with the revolving shaft and screw."

But there are still other cases that come even closer to the point—in fact they decide it. The part of Section 13222, Revised Statutes 1929, which we are considering, in substance was Section 3 of the Factory Act, Laws 1891, page 159. In Latapie-Vignaux v. Askew Saddlery Co., 193 Mo. 1, 12, 91 S. W. 496, 499, the court had before it Section 5 of the same act, now Section 13225, Revised Statutes 1929, requiring hatchways, elevator shafts and well holes to be covered or guarded. The plaintiff in attempting to start a freight elevator had fallen down the unguarded shaft. It was held the statute was for the protection of persons working around the openings and not for elevator operators. The court said: "The language of the section, together with the context and the other accompanying provisions of the act, clearly demonstrates that the lawmakers had in mind provisions for the safety of employees in large factories." (The words "other establishments and places" appearing in the title

have been given a broader application than simply to factories by later cases.)

In Glaser v. Rothschild, 221 Mo. 180, 208, 120 S. W. 1, 10, 22 L. R. A. (N. S.) 1045, 17 Ann. Cas. 576, the same section was under construction by the Court en Banc. The plaintiff, an invitee, not an employee, had been injured by falling into an open elevator pit and sought to recover under the statute. Viewing the act as a whole the court observed that all of its 28 sections except two "invariably refer to the employees of the institutions therein mentioned," and called attention to the fact that the title expressly related to "the employment, safety, health and work hours of employees." The conclusion reached was that the act protected employees and not invitees.

In Mansfield v. Wagner Elec. Mfg. Co., 294 Mo. 235, 239, 242 S. W. 400, 401, the Glaser-Rothschild case last referred to was cited approvingly and the principle thereof applied to another set of facts involving still another section of the same act.

In Behre v. Hemp & Co. (St. L. Ct. App.), 191 S. W. 1038, the plaintiff was sent by his employer to do certain japanning work for and on the premises of the defendant. While so engaged he fell through a hatchway and was injured. He sued, basing his right to recover on the statute, and the St. Louis Court of Appeals, on authority of Glaser v. Rothschild, supra, held the statute "has no application to any person except employees of the defendant."

Getting back to Section 13222, the guarding statute involved in the instant case, this court said of it in Strode v. Columbia Box Co., 250 Mo. 695, 706, 158 S. W. 22, 25, "the subject was danger from 'belting, shafting, gearing and drums' and the law was intended to prevent injury to employees by these particular agencies."

Notwithstanding these Missouri cases appellant insists that in view of the humane purpose of the law and the liberal construction heretofore accorded it, we ought in this case to hold it covered the deceased. Attention is called to the fact that the word "employed" used in the section sometimes means occupied, busied or engaged, as to say one's time is employed in a certain manner; and so the argument is presented that regardless of the contractual arrangement, when anyone is doing work in or about the establishments designated for the conductor thereof, and is actually occupied at a task in the line of that work, he ought to come within the protection of the statute if the machinery be so placed as to be dangerous to him.

But the statute will not fairly bear that interpretation. The title and context of the act forbid it. The language of the section itself excludes it. A person employed in or about an establishment and engaged in his ordinary duties is certainly something more than

an independent contractor on a particular job. When associated with the idea of service, the word employ means to hire or make use of the services of (Webster's New International Dictionary); and implies control by the employer over the means and manner of doing the work. [3 Words & Phrases (3 Ser.) p. 203; 3 Id. (1 Ser.) p. 2372.] In our opinion the general underlying purpose of the law was to render industrial premises safe for those who through continuity of service are constantly brought in dangerous proximity to exposed machinery. There would not be the same reason for such requirements in favor of an independent contractor controlling his own movements and only occasionally called for special work. The general doctrine is said to be that statutes of that character do not cover independent contractors. [43 A. L. R. pp. 336, 353, note.]

Kanz v. J. Neils Lbr. Co., 114 Minn. 466, 131 N. W. 643, 36 L. R. A. (N. S.) 269, and some of the decisions reviewed in the note appended to the report of that case in L. R. A. may seem to run counter to the conclusion just stated, but where they do they are to be differentiated because of a difference in the statute or for some other controlling reason, or else they are wrong, in our opinion. Two of the cases cited are Missouri decisions. We summarize them.

In Fell v. Rich Hill Coal Mining Co., 23 Mo. App. 216, the defendant owner of a coal mine contracted with M to mine the coal. The defendant was to furnish the engineer and hoisting machinery. The elevator cage was not provided with a spring catch in obedience to what is now Section 13641, Revised Statutes 1929, requiring the "owner, agent or operator" of every shaft mine to furnish such equipment. The cage fell and the plaintiff, an employee of the independent contractor M, was injured. It was held he could recover under the statute, on the ground that inasmuch as the defendant owner had reserved control of the operating machinery, to that extent the relation of master and servant existed between it and the plaintiff. But for that fact, says the opinion, there would be no liability.

In Leslie v. Rich Hill Coal Mining Co., 110 Mo. 31, 19 S. W. 308, the defendant contracted with W to mine the coal in one of its mines, but without relieving itself of the obligation to provide sufficient timber for props enjoined by the statute, now Section 13673, Revised Statutes 1929, on "the owner, agent or operator." In fact, by the contract with W. that duty was expressly continued on the defendant. The statute further provided, now Section 13671, Revised Statutes 1929, that "for any injury to persons or property occasioned by any willful violations of this act . . . a right of action shall accrue to the party injured," etc. The plaintiff employee of the independent contractor W was injured by the caving in of the mine roof, due to a lack of props. It was held he could.

recover against the owners, the court saying the statutory requirement "was intended to secure the health and safety of the persons employed in the mines, no matter by whom employed," and that "the relation of master and servant is not therefore necessarily involved, nor the principles of law governing that relation."

So, in a later case, Tomlinson v. Marshall, 208 Mo. App. 381, 236 S. W. 680, the defendant owner of a laundry leased it to F. Included in the equipment was a mangle, the rollers of which were unguarded. An employee of F, the lessee, caught his hand between the rollers and was injured. It was held he could recover against the owner under the guarding statute, Section 13222, Revised Statutes 1929, in view of Section 13241, Revised Statutes 1929, making it a misdemeanor for any person, firm or corporation, being the owner, agent, lessee or occupant of any establishment designated by the article, and for any employee therein or thereat, to "violate or *aid or abet* in violating any of the provisions" of the article. (Italics ours.)

Without extending this discussion, already too long, of the Missouri cases bearing on the statute, it will be observed that even the decisions reviewed in the last few paragraphs harmonize with those earlier cited, on the proposition that a plaintiff to recover under the statute must be an employee of *somebody*. He must be employed in or about the establishment and have "ordinary duties." Whom he may sue is a question with which we are not concerned in this case.

(b) Was the deceased an employee or an independent contractor? We think the evidence conclusively shows he was the latter. He was conducting a business of his own with the usual indicia of a business enterprise. He made engagements where, when and with whom he chose. While working at the respondent's plant he came and went at his own pleasure, bringing and using his own tools and materials. He adopted his own methods and the respondent had no control over his work except as to the result. When the job was done his bill was due.

In McGrath v. St. Louis, 215 Mo. 191, 210, 114 S. W. 611, 617, quoting Crenshaw v. Ullman, 113 Mo. 633, 639, 20 S. W. 1077, 1078, the rule laid down is that "an independent contractor . . . is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished." See also 39 C. J. sec. 1518, p. 1316; 14 R. C. L. sec. 3, p. 67; 19 A. L. R. 226, note; Coul v. Geo. B. Peck Dry Goods Co. (Mo. banc.), 32 S. W. (2d) 758; Aubuchon v. Security Const. Co. (St. L. Ct. App.), 291 S. W. 187, 189.

All the evidence in this case negatives the idea that the respondent had any control over the deceased as to the method and manner

of doing the work; and appellant does not attempt to point out any to the contrary. But she argues the circumstances as a whole support an inference that the deceased was within the "general" employment of the respondent. It is insisted the respondent would not have permitted the deceased to install the conduit pipe and electrical apparatus to be used in the plant without reserving some control over how it should be put in. This does not follow at all in any such sense as would make the deceased an employee. The respondent was interested in the result and could retain control over that even during the progress of the work without converting the relation between itself and the deceased into that of master and servant. [39 C. J. sec. 1521, p. 1319; 14 R. C. L. sec. 4, p. 68; 20 A. L. R. p. 693, note; Jackson v. Butler, 249 Mo. 342, 366, 155 S. W. 1071, 1078; Salmon v. Kansas City, 241 Mo. 14, 32, 145 S. W. 16, 21, 39 L. R. A. (N. S.) 328, 335.] Viewed in whatever aspect, we think the evidence shows the deceased was an independent contractor.

II. Appellant maintains further that even if it be conceded the guarding statute here involved was enacted for the protection of employees and that the deceased was not an employee but an independent contractor, she may, nevertheless, recover under the statute for the death of the deceased—this for two reasons: first, on authority of Meenach v. Crawford (Mo. Div. 1), 187 S. W. 879, 882; and second, because the respondent did not plead the defense of independent contractor, but on the contrary, affirmatively set up the defense of assumed risk, which appellant says confessed the relation was that of master and servant.

(a) In the Meenach case a pedestrian was crossing a street in St. Louis close to a place where a street car was discharging passengers, and was struck by the defendant's automobile and killed. The wife sued for his death. In its opinion this court set out the last part of Paragraph 2, Section 8, Laws 1911, pages 322, 326, providing in substance that in approaching or passing street cars standing to receive or discharge passengers, the operator of every motor vehicle shall slow down, and if necessary, stop; and when approaching a pedestrian out in the highway shall slow down and give a timely signal. The opinion holds the defendant was guilty of negligence in driving at an excessive speed, without warning, through the space where people were leaving the street car, but says: "The mere fact that the automobile struck Meenach instead of one of said passengers does not relieve the conduct of the defendant of negligence, for the obvious reason that the law imposed upon him to perform the duties mentioned in Section 8, Paragraph 2 (aforesaid),

for the protection of not only the passengers who were getting on and off the car, but also for the safety of all persons who might be about it.'' This evidently referred to the part of the section concerning pedestrians. · The decision is somewhat obscure, but does not have the meaning attributed to it by appellant. It is not authority for the statement that one may recover damages for violation of a statute not enacted for his protection.

(b) On the question of pleading. The petition alleged the deceased was ''employed'' by the respondent at its plant, and that he ''was performing his duties as an employee'' when injured. The  answer contained a general denial. Under that plea the respondent was entitled to show the deceased was an independent contractor. [Baker v. Scott County Milling Co., 323 Mo. 1089, 1108, 20 S. W. (2d) 494, 501.] If he was that he was not an employee, and if he was not an employee his death gave no cause of action under the guarding statute, as we have held. Any evidence tending to show an asserted cause of action never had legal existence is admissible under a general denial. [Nall v. Brennan, 324 Mo. 565, 23 S. W. (2d) 1053, 1056.] And this is true though the facts presented be affirmative in character, if and insofar as they are adduced only to negative the plaintiff's cause of action and not by way of confession and avoidance. [Jones v. Rush, 156 Mo. 364, 371, 57 S. W. 118, 120; Connole v. Ill. Cent. Rd. Co. (St. L. Ct. App.), 21 S. W. (2d) 907, 909, 912; Prewitt v. Witte (K. C. Ct. App.), 26 S. W. (2d) 1020, 1023.]

Neither did the respondent waive that defense by pleading assumed risk. It could have been made under a general denial (Guthrie v. Gillespie, 319 Mo. 1137, 1151, 6 S. W. (2d) 886, 892); and was not inconsistent with a denial of the cause of action (Adair v. K. C. Term. Ry. Co., 282 Mo. 133, 148, 220 S. W. 920, 823). Furthermore, in its broader application the doctrine of assumption of risk, or incurred risk, is not limited to master-and-servant cases, but may be applied to other relations, especially where contractual. [5 C. J. 1412; 45 C. J. sec. 600, p. 1043; Tinkle v. St. L. & S. F. Rd. Co., 212 Mo. 445, 468, 110 S. W. 1086, 1093; Fillingham v. St. L. Transit Co., 102 Mo. App. 573, 580, 77 S. W. 314, 316.] Licensees and invitees assume certain risks in going on the premises of another (45 C. J. sec. 203, p. 798, sec. 244, p. 837), and no reason is apparent why that defense may not be pleaded in connection with a general denial. The plea here did not waive the main defense that the deceased was not an employee but an independent contractor.

III. The remaining contention of appellant is that she made a prima-facie case of common-law negligence, and should not have

been nonsuited for that reason. Conceding her petition stated a cause of action on that theory, and that it was a part of her trial theory, and passing by the question whether it was the common-law duty of the respondent to guard the belt (39 C. J. sec. 523, p. 402; 18 R. C. L. sec. 94, p. 591; Kuhn v. Lusk, 281 Mo. 324, 219 S. W. 638), we are of the opinion that her evidence did not entitle her to go to the jury.

The deceased in going to the respondent's plant as an independent contractor to do work, was an invitee. The respondent would be liable for injury to him occasioned by any unsafe condition of the premises encountered in the work, which was known to it but unknown to him; but was not liable for injuries resulting from conditions obviously dangerous and known by the deceased to be so. As to these he was guilty of contributory negligence, or, more accurately, assumed the risk. He knew the belt was unguarded, he knew the motor was running "at great speed and with terrific force," as the petition says, and yet he took a position three feet above the floor with one foot upon the rounded flange of the motor and the other on a cross-piece against the wall about three feet away, with his legs astride the rapidly moving belt and his body twisted, while he worked. He was not a servant ordered by the respondent to go where he did; he was an expert following his own devices. He knew the conditions he would have to cope with. Under the authorities the respondent cannot be charged with liability for the unfortunate result. [Main v. Lehman, 294 Mo. 579, 243 S. W. 91; Vogt v. Wurmb, 318 Mo. 471, 300 S. W. 279; Goetz v. Hydraulic Press Brick Co., 320 Mo. 586, 9 S. W. (2d) 606; Cash v. Sonken-Calamba Co., 322 Mo. 349, 17 S. W. (2d) 927.]

The judgment is affirmed. *Seddon* and *Ferguson, CC.,* concur.

PER CURIAM:—The foregoing opinion by Ellison, C., is adopted as the opinion of the court. All of the judges concur.

*NOTE: Opinion filed at October Term, 1930, March 31, 1931; motion for rehearing overruled at April Term, May 21, 1931.